**BUNGE CORPORATION, Plaintiff,**

v.

**MV FURNESS BRIDGE, her engines, tackle, appurtenances, etc., in rem, Furness Withy & Co., Ltd., in personam, Defendants.**

**Civ. A. No. 74–1656.**

United States District Court,
E. D. Louisiana.

Dec. 19, 1974.

John F. Blackwell, New Orleans, La., for plaintiff.

J. Dwight LeBlanc, Jr., New Orleans, La., for defendants.

## OPINION ON MOTION TO STAY PENDING ARBITRATION

ALVIN B. RUBIN, District Judge:

Furness Withy, owner of the M/V Furness Bridge, chartered the vessel to Seabridge Shipping Ltd. The charter party contained a safe berth clause, which read as follows:

6. That the cargo or cargoes be laden and/or discharged in any dock or at any wharf or place that Charterers or their Agents may direct, provided the vessel can safely be always afloat at any time of tide.

The charter party also contained a broad arbitration clause.

Seabridge subchartered the vessel to Bunge. This subcharter party also contained a safe berth clause, although in slightly different language, and a broad arbitration clause, but one that provided for a different method of selecting arbitrators than the Furness-Withy-Seabridge clause.

While the vessel was being operated under the subcharter by Furness Withy's crew, it struck a dock owned by Bunge

on the Mississippi River. Bunge libelled the vessel in rem and bypassed Seabridge, its charterer, to sue the owners in personam for negligence.

The defendants seek to stay the suit pending arbitration. They contend that the safe berth clause obliged Bunge to furnish a safe berth; that its failure to do so caused the damage to the dock complained of; and that whether or not this was the case is a matter to be determined by arbitrators.

Both charter parties require arbitration in London. The Furness Withy charter provides for referral to three persons at London, "one to be appointed by each of the parties hereto, and the third by the two so chosen; their decision or that of any two of them, [punctuation sic] shall be final, and for the purpose of enforcing any award, this agreement may be made a rule of the Court. The Arbitrators shall be commercial men." The Seabridge-Bunge charter party provides for either one arbitrator or two arbitrators and an umpire, and the procedure for arbitrating is outlined in more detail.[1] Bunge's counsel, on the basis of information from London solicitors, states that neither English law nor arbitration custom would permit the two arbitrations to proceed before the same arbitrators,[2] nor would it be possible to implead a third party into either arbitration.[3]

Furness Withy's counsel states that he cannot challenge the correctness of the statement. If counsel are correct, no single arbitration can dispose of the issues in this suit.

Bunge has no contract with Furness Withy, nor is Furness Withy a third party beneficiary of the Seabridge-Bunge charter. Hence Bunge undertook no obligation to Furness Withy concerning a safe berth. Bunge has no agreement with Furness Withy to arbitrate the dispute between them. Furness Withy's only course in arbitration is to proceed with its claims against Seabridge, and several results are possible. The arbitrators might decide that Seabridge did, or that it did not, have a duty under the charter party to provide a safe berth; if it had such a duty, that it did, or did not, breach its obligation; and, finally, that Furness Withy's master, crew or pilot were or were not negligent. But none of these determinations would bind Bunge, or, for that matter, Furness Withy as against Bunge—though in the latter instance issues of collateral estoppel might arise.

Before the issues raised by the complaint could be resolved, it would also be necessary for Seabridge to arbitrate with Bunge. Seabridge is not before the court. It cannot be compelled to arbitrate. The court might, of course, stay this suit until Bunge demanded ar-

---

1. All disputes from time to time arising out of this contract shall, unless the parties agree forthwith on a single Arbitrator, be referred to the final arbitrament of two Arbitrators carrying on business in London who shall be Members of the Baltic and engaged in the Shipping and/or Grain Trades, one to be appointed by each of the parties, with power to such Arbitrators to appoint an Umpire. Any claim must be made in writing and Claimant's Arbitrator appointed within nine months of final discharge and where this provision is not complied with the claim shall be deemed to be waived and absolutely barred. No award shall be questioned or invalidated on the ground that any of the Arbitrators is not qualified as above, unless objection to his acting be taken before the award is made.

2. Vigo SS Company v. Marship Company, N.Y.S.D., 32 A.D.2d 10, 299 N.Y.S.2d 200 (1969) rev'd N.Y.St., 26 N.Y.2d 157, 309 N.Y.S.2d 165, 257 N.E.2d 624 (1970), is not relevant because it deals with the authority of an American court to order two arbitrations pending in New York to be consolidated. Here the arbitrations would take place in London, before panels of arbiters differently constituted. Presumably English law would apply.

3. "It is essential, in order to compel the respondent to proceed to arbitration, for the petitioner to show a written agreement containing an arbitration clause which would bind the respondent under general contract law." Superior Shipping Company v. Tacoma Oriental Line, Inc., S.D.N.Y.1967, 274 F.Supp. 25, 28.

bitration of these issues from Seabridge, but the arbitrators in the two controversies might reach inconsistent conclusions.

Counsel for Furness Withy suggests that Seabridge and Bunge presently are arbitrating the question whether Bunge should pay Seabridge demurrage and other costs incurred as a result of the episode, and whether or not the Bunge wharf is a safe berth. That arbitration does not include this issue of dock damage, and its outcome will not conclude the issues in this suit.

Nor is it certain that either of the two possible arbitrations, even if they did deal with all the points at issue here, would ultimately resolve the issues. Furness Withy argues that the safe berth clause implies a duty by the charterer to furnish a safe berth and liability for the damages that may result from its failure to do so. On its face the clause does not go that far: it appears merely to exonerate the owner from any duty to berth the ship at a place its master deems unsafe. The ultimate interpretation of this clause is a legal question on which no authority has been furnished the court.[4] If the question of law on which Furness Withy bases its defense is in fact one of first impression, or is at least not authoritatively settled, then the court might well be asked to consider whether the principles of law applied by the arbitrators were correct, although the court's authority in this regard is severely limited. Sobel v. Hertz, Warner & Co., 2 Cir. 1972, 469 F.2d 1211; Safeway Stores v. American Bakery and Confectionary Workers Union, 5 Cir. 1968, 390 F.2d 79; Internat'l Union of Operating Engineers v. Mid-Valley, Inc., D.C.Tex.1972, 347 F.Supp. 1104; Barker v. Government Emp. Ins. Co., D.D.C.1972, 339 F.Supp. 1064.

Another action against Furness Withy and the M/V Furness Bridge has been brought by Shell Pipe Line Corporation, the owner of a submarine pipeline located downstream from the Bunge wharf, for damages to its pipeline that Shell alleges were caused by the vessel dragging her anchors over the pipeline when she broke away from the wharf. In that action, Furness Withy has third partied Bunge. That suit, Civil Action No. 74-1508, is in another section, and of course no arbitration can affect Shell's position. However, if this suit between Furness Withy and Bunge is not stayed, both the Shell suit and Bunge's present claim can be transferred to the same section of court. The court is informed that Seabridge might be subject to its jurisdiction, and that it might be brought in. In that event, all of the claims among the various parties could be resolved speedily in a single proceeding. The case has already been set for trial on March 14, 1975. The motion to stay thus was filed somewhat belatedly.

While these circumstances are not in themselves controlling, they lend additional weight to the conclusion that the action should not be stayed. Arbitration would be more cumbersome and dilatory than litigation and, since it would not in all likelihood avoid the expense of at least some litigation, it would prove to be more expensive to add to these litigation costs the burden of arbitrators' fees and other expenses of arbitration. Hence we have the converse of the situation in Tepper Realty Co. v. Mosaic Tile Co., S.D.N.Y.1966, 259 F.Supp. 688; the multiplicity of parties, all of whom can be reached and bound only by a judicial proceeding, and the avoidance of unnecessary litigation militate against granting the stay. The jurisdiction of the court to construe the

---

4. The Interim Award in the matter of an arbitration between Standard Oil of California and the SS Maryland Tanker by Ferdinand E. Sauer et al., April 16, 1974, brought to the court's attention by counsel for defendant, does not interpret the clause. The arbiters conclude, "[I]t was at the discretion of the Master to evaluate the risks and the circumstances and to decide whether or not it was safe to berth the vessel without tug assistance." They go on to conclude that the vessel was proceeding at an excessive rate of speed and was caused by the Master's fault.

charter parties is not challenged. A charter party is a maritime contract and disputes arising from it are within the admiralty jurisdiction. Victory Transport, Inc. v. Comisaria General, 2d Cir. 1964, 336 F.2d 354.

■ The ancient judicial hostility to arbitration has been declared archaic by the Federal Arbitration Act, 9 U.S.C. § 1 et seq. Where there is an agreement to arbitrate, courts favor arbitration. Galt v. Libbey-Owens-Ford Glass Co., 6 Cir. 1967, 376 F.2d 711; Hilti, Inc. v. Oldach, 1 Cir. 1968, 392 F.2d 368. The Arbitration Act contemplates a stay only where the suit is brought "upon [an] issue referable to arbitration." 9 U.S.C. § 3. It contemplates that the stay is to be granted because arbitration would resolve the litigation, in whole or in part. Arbitration will not do that here. Nor is there here any issue referable to arbitration between the parties to this suit, since they have joined in no agreement requiring arbitration with each other.

■ The court's inherent power to stay, which has sometimes been invoked where the Arbitration Act was not applicable, Nederlandse Ertz-Fanker Smaatachappy v. Isluandtsen Co., Inc., 2 Cir. 1964, 339 F.2d 440, 362 F.2d 205 (1966), should not be utilized here. To do so would contradict the purposes of the power: it would not result in economy of time and efforts for the court, counsel, or litigants.

For these reasons, the motion to stay is denied.

I have conferred with the presiding judge of Section G. Since this case is already set for trial, counsel in Civil Action No. 74–1508 are ordered to move to transfer that case to Section C, and then to move to consolidate both cases. Counsel for both parties in 74–1508 are furnished a copy of the Magistrate's pre-trial order, and are directed to prepare for trial accordingly.