ALBERS MILLING COMPANY et al., Plaintiffs,

v.

BARGE ANTONE F, etc., Defendant.

MU–PETCO CO., Claimant and Third Party Plaintiff,

v.

CROWLEY MARITIME SALVAGE COMPANY, etc. et al., Third Party Defendants.

No. C79–68TB.

United States District Court, W. D. Washington.

Feb. 26, 1980.

---

**38**

Michael H. Williamson of Madden & Pol-
iak, Seattle, Wash., for plaintiffs.

William J. Glueck of Riddell, Williams,
Ivie, Bullitt & Walkinshaw, Seattle, Wash.,
for claimant, Mu-Petco and defendant,
Barge ANTON F.

James Bauer of Detels, Draper & Marin-
kovich, Seattle, Wash., for Crowley Mari-
time Salvage Co. and the Tug SIOUX, third
party defendants.

Stephanie J. Grogan of LeGros, Buchan-
an, Paul & Madden, Seattle, Wash., for Gulf
Coast Transit Company, Inc. and the Tug
ELLENA HICKS, third party defendants.

### ORDER DENYING DISMISSAL
### OR STAY

BEEKS, Senior District Judge.

This suit results from the loss of a ship-
ment of corn and grain which occurred dur-
ing a contractual salvage operation of the
chartered barge, ANTONE F, by third-par-
ty defendants, Crowley Maritime Salvage
Company (Crowley) and Crowley's tug,
SIOUX. The barge was initially being
towed from Washington to Hawaii by
ELLENA HICKS, a tug owned by Gulf
Coast Transit Co. (Gulf Coast). Within a
week after the voyage began, ELLENA
HICKS' tow line parted and ANTONE F
developed a starboard list. The relationship
between these events and their sequence is
unclear from the pleadings. However, it
does appear that ANTONE F was in peril
off the Oregon coast when, on January 4,
1979, the vessel's owner, Bulk Food Carri-
ers, Inc. (Bulk Food), executed a Lloyd's
"open form" or standard "no cure-no pay"
salvage contract whereby Crowley agreed
to salve the barge and its cargo.

SIOUX was dispatched and assumed the
task of towing ANTONE F back to Puget
Sound. During the return voyage, the
barge capsized and its cargo was lost.

The owners of the cargo and their insurer
brought this action against ANTONE F for
damages. Mu-Petco Shipping Co., Inc. (Mu-
Petco) filed a claim to the vessel, secured its
release, and filed an answer to the com-
plaint.[1] Mu-Petco also filed a third-party
complaint against Crowley, Gulf Coast,
SIOUX, ELLENA HICKS, and 01-Mar,

1. At the time of the attempted voyage to Ha-
waii, Bulk Food was in bankruptcy. The sal-
vage agreement, executed on January 4, 1979,
was approved without notice to creditors by the court on the following day. The sale of
ANTONE F to Mu-Petco was authorized by the
court on February 9, 1979.

Inc., the charterer of the vessel at the time of the capsizing.[2] Mu-Petco demanded judgment against each third-party defendant under Fed.R.Civ.P. 14(c).[3]

Crowley moves for an order either dismissing Mu-Petco's third party claims against it or, alternatively, staying all such proceedings or all discovery. The motion is premised on the argument that Mu-Petco is required to arbitrate under the salvage contract. The contract allows arbitration in London with respect to remuneration in the event of success. It further provides that "any difference arising out of th[e] agreement or the operations thereunder shall be referred to arbitration in the same way." Since arbitration under the contract is presently pending in London,[4] Crowley seeks a stay under the United States Arbitration Act, 9 U.S.C. §§ 1–14 (1976). Section 3 of that act provides:

"If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration . . . , shall on application of one of the parties stay trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration." [5]

In addition, Crowley cites the Convention on the Recognition and Enforcement of Foreign Arbitral Awards [6] (hereafter, the Convention). The Convention, implemented by 9 U.S.C. § 201 (1976), provides at paragraph 3 of Article II that "[t]he court of a Contracting State, when seized of a matter in respect of which the parties have made an agreement [in writing, to submit differences to arbitration] within the meaning of this article, shall at the request of one of the parties, refer the parties to arbitration." Should the court find that neither the United States Arbitration Act nor the Convention apply, movant nevertheless invokes the court's discretionary power to stay proceedings under *Leyva v. Certified Growers of California, Ltd.*, 593 F.2d 857, 863–64 (9th Cir.), *cert. denied,* 444 U.S. 827, 100 S.Ct. 51, 62 L.Ed.2d 34 (1979), and the cases cited therein.

Mu-Petco opposes Crowley's motion on several grounds.[7] First, it asserts that dismissal is not authorized under the United States Arbitration Act and that the salvage contract between Bulk Food and Crowley does not come within the terms of the Convention because both parties to the contract are United States citizens. Next, Mu-Petco challenges application of the contract both as to it, since it was not a party thereto, and as to its third-party complaint, since the claims therein do not arise out of the salvage contract.[8] Raising the specter of

2. Process has, as yet, not issued with respect to either tug and they are, therefore, only nominal parties to this action. For convenience, any reference hereafter to the tugs is omitted since their respective legal positions and the claims against them are identical with those of their owners.

3. Under Fed.R.Civ.P. 14(c), third-party plaintiffs in admiralty cases "may . . . demand judgment against the third-party defendant in favor of the plaintiff, in which event the third-party defendant shall make his defenses to the claim of the plaintiff as well as to that of the third-party plaintiff in the manner provided in Rule 12 and the action shall proceed as if the plaintiff had commenced it against the third-party defendant as well as the third-party plaintiff."

4. The record, thus far, fails to reveal precisely the nature of the issues being considered there or whether parties other than Crowley and Mu-Petco are also involved.

5. 9 U.S.C. § 3 (1976).

6. June 10, 1958, 21 U.S.T. 2517, T.I.A.S. No. 6997.

7. Plaintiffs and Gulf Coast also oppose the motion. They join Mu-Petco's opposition based on the fact that they, too, were not parties to the salvage contract.

8. Mu-Petco's second amended third-party complaint seeks recovery from all third-party defendants for the hull damage sustained by ANTONE F and lost profits, together with interest, costs, and attorneys' fees. Further, various "indemnification" claims are asserted as to each third-party defendant.

"inconsistent and duplicative determinations," claimant also suggests that the legal complexities of this case render it unsuitable for arbitration, *Bunge Corp. v. MV Furness Bridge*, 390 F.Supp. 603, 605 (E.D.La. 1974), and that, in any event, Crowley does not demonstrate sufficient need, in light of possible prejudice to Mu-Petco, for exercise of the court's inherent power to stay proceedings under *Leyva, supra*. *Landis v. North American Co.*, 299 U.S. 248, 254, 57 S.Ct. 163, 165, 81 L.Ed. 153 (1936). Finally, Mu-Petco construes 9 U.S.C. § 3 as only allowing a stay of trial, leaving unaffected Mu-Petco's discovery rights while the arbitration is in progress.

■ The initial question before the court is whether this case involves issues arbitrable pursuant to an agreement in writing within the purview of Section 3 of the Arbitration Act or Article II of the Convention. It does not.

In supporting its motion, Crowley virtually disregards the obvious impediment to a stay, i. e., that it is the only party to this action who is also a party to a written contract which provides for arbitration. Crowley does not address headon the question of whether Mu-Petco should be bound by a contract it did not sign.[9] Rather, it offers the bare conclusion that Mu-Petco stepped into Bulk Food's shoes either because the salvage contract was approved by the bankruptcy court or because the court allowed Mu-Petco to purchase ANTONE F subject to Crowley's claim of lien for salvage.

■ General principles of contract law govern disputes under salvage contracts, *Puamier v. Barge BT 1793*, 395 F.Supp. 1019, 1037 (E.D.Va.1974), and determine who is bound by arbitration provisions in such contracts. *Interocean Shipping Co. v. National Shipping and Trading Corp.*, 523 F.2d 527, 539 (2d Cir. 1975), *cert. denied*, 423 U.S. 1054, 96 S.Ct. 785, 46 L.Ed.2d 643 (1976). Thus, it has been held that where the owners of an imperiled vessel ignored the opportunity to consult with the owners of cargo aboard the vessel before entering into a Lloyd's no cure-no pay salvage contract, the cargo owners were not bound by the arbitration provisions in that standard contact. *American Metal Co., Ltd. v. M/V Belleville*, 284 F.Supp. 1002, 1006 (S.D.N.Y. 1968). The holding in *Belleville* is in accordance with the basic principle that "[u]nlike court proceedings, there can be no valid arbitration unless the parties have expressly contracted to use this method of adjudication of their dispute." R. Summer, *Maritime Arbitration—Some of the Legal Aspects*, 49 Tulane Law Review 1035 (1975); see, W. Tetley, Marine Cargo Claims, 296 (2d ed. 1978).

I fail to perceive, and Crowley does not explain, how application of the foregoing principle is altered because of (1) the orders entered in Bulk Food's bankruptcy proceedings, or (2) the fact that Mu-Petco acquired the barge subject to a previously existing salvage lien; or (3) Mu-Petco's participation in the London arbitration; or (4) Mu-Petco's assertion of a claim for hull damage occurring while the barge was owned by another.

The next issue is whether a discretionary stay of all or any portion of this action

---

In the event ANTONE F is found liable to plaintiffs under the bill of lading or to Crowley under the salvage contract, Mu-Petco prays for indemnification from Gulf Coast for negligent performance of its towage contract with 01-Mar, Inc. Similarly, Mu-Petco asks that 01-Mar, Inc., by virtue of its charter party with Bulk Food, indemnify Mu-Petco's liability for lost cargo and/or salvage. Since Crowley has not yet answered the third-party complaint, it is clear that Mu-Petco's requests for indemnification as to salvage are interjected merely in anticipation of Crowley raising the issue by counterclaim.

Finally, Mu-Petco seeks indemnification from Crowley for negligence in the attempted salvage of plaintiffs' cargo.

**9.** The contract, dated January 4, 1979, was executed by W. D. McLean for Crowley and "Captain S. J. Valentine for and on behalf of the Owners of the 'ANTONE F' her cargo and freight." On February 9, 1979, Valentine, representing Bulk Food, and McLean, again representing Crowley, executed a memorandum agreement altering the port to which Crowley was to deliver the barge.

should be entered. The factors involved dissuade me from doing so.

It may be true that Crowley—or for that matter, Mu-Petco—would suffer some inconvenience by having to defend this action while simultaneously prosecuting the London arbitration. Nevertheless, a stay as to Crowley would obviously prejudice other parties involved in this case by interfering with their efforts to formulate and advance defenses to either the complaint or the third-party complaint. After all, the cargo was lost while ANTONE F was being towed by Crowley. That fact alone inseparably entwines Crowley with the third-party plaintiff and the remaining third-party defendants, all of whom are alleged to have contributed in some manner in causing damages to plaintiffs. From what I have been informed of the facts, a stay of proceedings or discovery concerning movant would not promote a just and efficient determination of this case in its current posture. *Leyva v. Certified Grocers of California, Ltd., supra*, 593 F.2d at 863–64.

Accordingly, Crowley's motion for summary judgment of dismissal and for a stay of proceedings or discovery is denied.