**COASTAL (BERMUDA) LTD.,
Plaintiff-Appellant,**

v.

**E.W. SAYBOLT & CO., INC.,
Defendant, Third Party
Plaintiff-Appellee,**

and

**Equity Shipping Corp., Third Party
Defendant-Appellee.**

No. 84–3313.

United States Court of Appeals,
Fifth Circuit.

May 23, 1985.

Robert M. Contois, Jr., New Orleans, La., for plaintiff-appellant.

Stanley Renneker, James M. Tompkins, John E. Galloway, New Orleans, La., for E.W. Saybolt & Co., Inc.

M.D. Yager, New Orleans, La., for Equity Shipping Corp.

Before GOLDBERG, POLITZ and WILLIAMS, Circuit Judges.

GOLDBERG, Circuit Judge:

This appeal forces us to acknowledge a lumbering, antedeluvian concept that remains embedded in the judicial esse. A district court has stayed its proceedings in admiralty pending the outcome of an arbitration involving, among others, the plaintiff and third-party defendant. Although we would like in general to pass on the validity of such deferrals, we are as a rule bound to the mummified notion that stays in admiralty are nonappealable interlocutory orders. We accordingly dismiss the appeal.

It has been said that "[i]nnumerable and remarkable are the ways in which cargo may be damaged on a voyage at sea." 1 E. Jhirad, A. Sann, B. Chase, & M. Chynsky, *Benedict on Admiralty* § 222, at 14–11 (7th ed. 1985). How chillingly true. It all started on a fatal day in December of 1981, when the Equity Shipping Corporation ("Equity"), owner of the M/T Halki, chartered its vessel to the GHR Energy Corporation ("GHR"). GHR loaded a cargo of fuel oil aboard the Halki in Louisiana and issued a tanker bill of lading for delivery of the cargo to the Armada Transport and Refining Company, Ltd. ("Armada"), in Amsterdam, Holland. Armada had hired E.W. Saybolt and Company, Inc. ("Say-

bolt"), to survey the cargo and to report its properties and quantity. While the Halki was en route to Amsterdam, Coastal (Bermuda) Ltd. ("Coastal") purchased the cargo from Armada, in at least partial reliance on Saybolt's report to Armada.

This appeal arises out of Coastal's suit against Saybolt in the Eastern District of Louisiana pursuant to Fed.R.Civ.P. 9(h).[1] Coastal's complaint alleged that Saybolt had contracted with Armada to survey and analyze the fuel oil, that Saybolt had issued reports of its findings knowing that purchasers of the cargo would rely on those reports, that Coastal had purchased the cargo from Armada in reliance on Saybolt's reports, and that Saybolt's reported specifications had proved to be materially erroneous. That is, Coastal sought damages as a third-party beneficiary of the Armada-Saybolt contract.

Instead of allowing Coastal to press its claim, however, the district court stayed suit pending the outcome of an arguably related arbitration involving all of the relevant actors—all, that is, except Saybolt. When the Halki arrived in Amsterdam and the cargo had been off-loaded, Equity sought from GHR demurrage, costs, expenses, and interest, demanding arbitration pursuant to the charter party. Seeking redress in its own right from Armada and Coastal, GHR filed suit in the Southern District of New York and obtained an order compelling and consolidating arbitration among itself, Equity, Armada, and Coastal. If it ever comes to pass, the arbitration will in theory resolve, among other things, Coastal's claim for damage to the cargo allegedly caused by deficiencies in the Halki's steam coils, but since Saybolt cannot be made a party to the arbitration, that proceeding will not include any claims against Saybolt for negligent surveyance

---

1. Rule 9(h) provides in relevant part:

A pleading or count setting forth a claim for relief within the admiralty and maritime jurisdiction that is also within the jurisdiction of the district court on some other ground may contain a statement identifying the claim as an admiralty or maritime claim for the pur-

poses of Rules 14(c), 38(e), 82, and the Supplemental Rules for Certain Admiralty and Maritime Claims.... The reference in Title 28, U.S.C. § 1292(a)(3), to admiralty cases shall be construed to mean admiralty and maritime claims within the meaning of this subdivision (h).

of the cargo. We now need more than a spyglass to see the arbitration's end, though, since in January of 1983, GHR filed a petition pursuant to Chapter 11 of the Bankruptcy Act—a step which automatically stayed the arbitration. Now over two years later, the parties are no closer to resolution than they were in the opening days of 1983.

Interestingly, Saybolt never moved to stay this lawsuit. Responding to Coastal's complaint, Saybolt's answer included a third-party demand against the Halki and against Equity as the Halki's owner, alleging fault in the handling and transportation of the cargo, seeking indemnity or contribution for any liability Saybolt had to Coastal, and further seeking recovery on behalf of Coastal against Equity pursuant to Fed.R.Civ.P. 14(c).[2] Equity responded with a motion to dismiss Saybolt's theories of indemnification and contribution, and moved to dismiss the 14(c) claim between Coastal and Equity or, alternatively, to stay proceedings on the 14(c) claim pending the outcome of the New York arbitration. The third-party defendant's motion to stay Saybolt's 14(c) claim was the only such motion before the district court.

While Equity's motion was awaiting resolution, counsel for Equity and Coastal agreed and reported to the court that the appropriate disposition of the 14(c) claim was to dismiss it without prejudice to Coastal's rights in the pending arbitration. In addition, at the hearing on Equity's motion for stay, Saybolt conceded that its third-party complaint had been filed for the sole purpose of interposing the 14(c) claim on behalf of Coastal. Nonetheless, even though Saybolt's third-party complaint could have been readily dismissed, and even though Equity's motion for stay of the third-party complaint was the only such motion before the district court, the trial judge sua sponte stayed all proceedings with respect to all parties pursuant to section 3 of the Arbitration Act, 9 U.S.C. § 3 (1982). The order stated that the case was closed "pending arbitration," and that "the case shall be restored to the trial docket upon motion of a party if circumstances change." On April 25, 1984, the court denied Coastal's motion to vacate the stay, and the next day Coastal filed a notice of appeal, thereby divesting the district court of jurisdiction.[3]

Coastal appeals from the district court's order on the grounds that (1) section 3 of the Arbitration Act does not empower a federal court to stay litigation against a defendant who was not party to any relevant agreement to arbitrate, and (2) absent section 3's authorization, the district court

---

**2.** Rule 14(c) provides:

When a plaintiff asserts an admiralty or maritime claim within the meaning of Rule 9(h), the defendant or claimant, as a third-party plaintiff, may bring in a third-party defendant who may be wholly or partly liable, either to the plaintiff or to the third-party plaintiff, by way of remedy over, contribution, or otherwise on account of the same transaction, occurrence, or series of transactions or occurrences. In such a case the third-party plaintiff may also demand judgment against the third-party defendant in favor of the plaintiff, in which event the third-party defendant shall make his defenses to the claim of the plaintiff as well as to that of the third-party plaintiff in the manner provided in Rule 12 and the action shall proceed as if the plaintiff had commenced it against the third-party defendant as well as the third-party plaintiff.

**3.** At the hearing on Coastal's motion to vacate the stay, the trial judge expressed his discomfort with postponing the litigation indefinitely and proposed from the bench that Coastal refile its

motion to vacate in 60 days, when, the court proposed, it "just might grant [Coastal's] motion and try the issue." Record vol. 3, at 9. The court continued, "I don't like the fact that arbitrations tend to stop proceedings here in this court. I think we have to recognize that there are times when we ought to wait for the arbitration to run its course. Effectively he could sit around for five or six years." *Id.* Despite the trial judge's manifest ambivalence over perpetuating the stay, the unlimited duration of the stay order placed Coastal in the unenviable position of enduring the 60-day period and again facing the possibility that the court would deny its motion to vacate—thereby forfeiting whatever right of appeal it had—or of filing its notice of appeal within the requisite 30 days following its initial motion to vacate. By choosing the latter course, the district court was divested of the jurisdiction necessary to act on its stay or on any other aspect of the case. *See* Fed.R.App.P. 12(a).

202

abused its discretion in staying Coastal's claim against Saybolt where no party had moved for such action and where the suit would eventually proceed regardless of the arbitration's outcome.

As meritorious as either of these arguments might be, we lack jurisdiction to hear an appeal from a district court's stay of admiralty proceedings pending arbitration.[4] In *Schoenamsgruber v. Hamburg American Line*, 294 U.S. 454, 55 S.Ct. 475, 79 L.Ed. 989 (1935), the Supreme Court held that such stays are not final orders under what is now 28 U.S.C. § 1291, that they are not injunctions under what is now 28 U.S.C. § 1292(a)(1), and that they are not appealable interlocutory decrees under what is now 28 U.S.C. § 1292(a)(3). *Id.* at 456–58, 55 S.Ct. at 476–77. In reaching its decision, the Court employed an analytical framework premised on the differences among actions at law, in equity, or in admiralty. Because in the hallowed days of yore parties seeking to stay their proceedings in an action at law had to cross the street into a court of equity for an injunction, such stays, when self-imposed by a latter-day court to allow for the presentation of an equitable defense such as arbitration, were deemed appealable injunctions. *Shanferoke Coal & Supply Corp. v. Westchester Service Corp.*, 293 U.S. 449, 55 S.Ct. 313, 79 L.Ed. 583 (1935); *Enelow v. New York Life Ins. Co.*, 293 U.S. 379, 55 S.Ct. 310, 79 L.Ed. 440 (1935); *see also Ettelson v. Metropolitan Life Insurance Co.*, 317 U.S. 188, 63 S.Ct. 163, 87 L.Ed. 176 (1942) (reaffirming *Enelow* rationale in aftermath of single form of action). Admiralty courts, however, could not issue injunctions because these tribunals, while capable of applying equitable principles, foundered in the waters of a general equitable juris-

diction. Stays in admiralty were deemed mere calendar orders and, under *Schoenamsgruber*, were therefore nonappealable.

We do not seize this occasion to criticize at length a logic we would spurn as outdated. This others have done. *See, e.g., Mar-Len of Louisiana, Inc. v. Parsons-Gilbane*, 732 F.2d 444, 445–47 (5th Cir.1984) (Rubin, J., dissenting); 9 *Moore's Federal Practice* ¶ 110.20[3], at 240–46 (2d ed. 1985); 11 C. Wright & A. Miller, *Federal Practice & Procedure* § 2962 (1973). Instead, we reaffirm both our allegiance to the longstanding rule in this circuit as well as our alliance with those courts of appeals that have reluctantly followed the mandate of *Schoenamsgruber* in a more contemporary context. *See Constructora Subacuatica Diavaz, S.A. v. M/V. Hiryu*, 718 F.2d 690, 692–93 (5th Cir.1983); *Texaco, Inc. v. American Trading Transportation Co.*, 644 F.2d 1152, 1154 (5th Cir.1981); *W.R. Grace & Co. v. Trawler Crustamar*, 571 F.2d 318, 319 (5th Cir.1978); *Seaboard & Caribbean Transport Corp. v. Hafen-Dampfschiffahrt A.G. Hapag-Hadac Seebaderdienst*, 329 F.2d 538, 540–41 (5th Cir. 1964); *Gave Shipping Co., S.A. v. Parcel Tankers, Inc.*, 634 F.2d 1156, 1158 (9th Cir.1980); *Tradax Ltd. v. M.V. Holendrecht*, 550 F.2d 1337, 1339–41 (2d Cir. 1977); *see also Mar-Len*, 732 F.2d at 445 n. 1. *But cf. Treasure Salvors, Inc. v. Unidentified Wrecked & Abandoned Sailing Vessel*, 640 F.2d 560, 564–65 (5th Cir.1981) (holding that § 1292(a)(3) did not limit application of § 1292(a)(1) in admiralty action where district court had enjoined defendants from interfering with plaintiff's salvage operations). Since the Supreme Court has reaffirmed its own allegiance to the

<hr>

4. Coastal's claim cannot be characterized as anything other than a claim in admiralty. Disputes concerning the surveillance and sale of cargo are subject to being treated in admiralty, 1 E. Jhirad, A. Sann, B. Chase, and M. Chynsky, *Benedict on Admiralty* § 244, at 15–47 (7th ed. 1985), and Coastal's complaint sought relief as a maritime matter pursuant to Fed.R.Civ.P. 9(h). *Cf. Gave Shipping v. Parcel Tankers, Inc.*, 634 F.2d 1156, 1158 (9th Cir.1980).

Similarly, the holding of *Schoenamsgruber* is no less applicable to this case merely because Coastal's complaint was filed, unlike that in *Schoenamsgruber*, pursuant to Rule 9(h). *Schoenamsgruber* clearly prohibits the appeal of all district court stays in admiralty. *Texaco, Inc. v. American Trading Transp. Co.*, 644 F.2d 1152, 1154 (5th Cir.1981).

rules of *Enelow-Ettelson* and of *Schoe-namsgruber, see Baltimore Contractors, Inc. v. Bodinger,* 348 U.S. 176, 182–85, 75 S.Ct. 249, 253–54, 99 L.Ed. 233 (1955), a more palatable approach must orginate, if at all, in that Court or in Congress.[5]

■ Nor will we treat Coastal's appeal as a petition for writ of mandamus. *Cf. Southern Pacific Transportation Co. v. San Antonio, Texas,* 748 F.2d 266, 270 (5th Cir.1984); *United States v. Briggs,* 514 F.2d 794, 808 & n. 27 (5th Cir.1975). Insofar as Coastal's pursuit of redress from Saybolt has been hindered by a largely unrelated arbitration, we are sympathetic with the procedural stasis underlying this

appeal. There is apparently no intimate consanguinity between the case *sub judice* and the proceeding that pends in an alien jurisdiction, and where the spatial and temporal distance is so great, stay orders should be rare specimens in the museum of judicial tools. Would that we could say, "Damn the torpedoes—full speed ahead!"

■ Coastal, however, has not requested that we treat its notice of appeal as anything other than what it is, and we reserve writs of mandamus only for the most egregious of discretionary abuses, and where other avenues of relief had been traversed without success.[6] *See Kerr v.*

---

**5.** Although the issue was not raised by the parties, we note that the district court's order is not an appealable collateral order under *Cohen v. Beneficial Indus. Loan Corp.,* 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949). *Accord Gave Shipping,* 634 F.2d at 1158–59; *Tradax,* 550 F.2d at 1341.

**6.** The district court justified its stay on two grounds: first, under § 3 of the Arbitration Act, and second, as a matter of docket control and judicial economy, to limit the piecemeal adjudication that would result from an arbitration in New York and a related litigation in New Orleans. As to the first rationale, since this case does not present any issues referable to arbitration under an agreement between Coastal and Saybolt, § 3 cannot be the source of the district court's authority to stay a claim between these parties. *See Life of Am. Ins. Co. v. Aetna Life Ins. Co.,* 744 F.2d 409, 413 (5th Cir.1984) (per curiam) ("[T]he arbitrability of a dispute is to be decided by the courts on the basis of the contract entered into *by the parties.*" (emphasis added)); *Nederlandse Erts-Tankersmaatschappij v. Isbrandtsen Co.,* 339 F.2d 440, 441 (2d Cir. 1964). Further, while there is undoubtedly a strong national policy favoring arbitration, *see, e.g., Southland Corp. v. Keeting,* 465 U.S. 1, 104 S.Ct. 852, 858, 79 L.Ed.2d 1 (1984), that policy does not undermine the longstanding rule in this circuit that "if some claims are arbitrable and others are not and they are easily severable, ... the court should stay proceedings as to those claims which are arbitrable." *Wick v. Atlantic Marine, Inc.,* 605 F.2d 166, 168 (5th Cir.1979). Saybolt's Rule 14(c) claim on behalf of Coastal against Equity was arbitrable, as both the plaintiff and third-party defendant conceded; that this claim was subject to being stayed under § 3 did not *ipso facto* convert Coastal's claim against Saybolt into a § 3 claim as well.

The district court's second rationale—inherent power to control its own docket—is on only slightly more stable footing. A district court

certainly possesses the authority to regulate its flow of cases, *Landis v. North Am. Co.,* 299 U.S. 248, 254–55, 57 S.Ct. 163, 165–66, 81 L.Ed. 153 (1936), but this authority, though largely unreviewable, must not be abused, *see Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.,* 460 U.S. 1, 103 S.Ct. 927, 938, 74 L.Ed.2d 765 (1984). Generally, the moving party bears a heavy burden to show why a stay should be granted absent statutory authorization, and a court should tailor its stay so as not to prejudice other litigants unduly. *Nederlandse,* 339 F.2d at 442.

Where a discretionary stay is proposed, something close to genuine necessity should be the mother of its invocation. The words "pending arbitration" can do no more to close the judicial doors than the words "open sesame" can do the reverse. In the present case, the district court, having before it only Equity's motion to stay Saybolt's 14(c) claims, acted of its own accord to stay Coastal's claim against Saybolt. The court was obviously concerned that resolution of the New York arbitration would in some way affect the outcome of the instant litigation, but the court was equally, and properly, concerned that Coastal's claim against Saybolt might be tabled indefinitely if the arbitration remained stymied due to GHR's pending bankruptcy proceeding. *See* note 3 *supra.* Saybolt, though, has incurred seven years of feast to Coastal's seven years of famine. *Cf. Genesis* 41:17–37. Piecemeal adjudication is not always undesirable adjudication; to the contrary, it is often *required* by federal law. *See Moses H. Cone,* 103 S.Ct. at 939. Whereas the better course would have been either not to issue or to limit the duration of its stay, *see, e.g., Landis,* 299 U.S. at 257, 57 S.Ct. at 167; *Nederlandse,* 339 F.2d at 442; *Albers Milling Co. v. Barge Antone F,* 487 F.Supp. 37, 40–41 (W.D.Wash.1980); *Petroleum Helicopters, Inc. v. Boeing-Vertol Co.,* 478 F.Supp. 84, 86 (E.D.La.), *aff'd per curiam,* 606 F.2d 114 (5th Cir.1979); *Bunge Corp. v. MV Furness Bridge,* 390 F.Supp. 603 (E.D.La.1974),

*United States District Court,* 426 U.S. 394, 402, 96 S.Ct. 2119, 2123, 48 L.Ed.2d 725 (1976); *Will v. United States,* 389 U.S. 90, 95, 88 S.Ct. 269, 273, 19 L.Ed.2d 305 (1967); *Overton v. City of Austin,* 748 F.2d 941, 952 (5th Cir.1984). Given the extraordinary delay that the New York arbitration and GHR's pending bankruptcy proceeding present, and given that the validity of Coastal's claims against Saybolt will be largely if not wholly unaffected by the outcome of the arbitration, we can safely assume that the district court may yet reconsider vacating the stay upon remand. Until now, the trial judge has not had the opportunity to reconsider its denial of Coastal's motion to vacate the stay: the notice of appeal was filed the day after entry of the district court's order. Moreover, adequate relief might be available to Coastal by the alternate route of filing for partial vacation of the bankruptcy court's stay of the New York arbitration. *See In re Davis,* 730 F.2d 176, 181, 185 (5th Cir. 1984) (per curiam).

■ If Coastal's grievance continues unrequited for a significant enough period of time, such may be the circumstances under which a petition for mandamus might be appropriately filed and granted. *Cf. McLellan v. Carland,* 217 U.S. 268, 280–81, 30 S.Ct. 501, 504, 54 L.Ed. 762 (1910). As Justice Cardozo penned with characteristic eloquence in *Landis v. North American Co.,* 299 U.S. 248, 57 S.Ct. 163, 81 L.Ed. 153 (1936), "The stay is immoderate and hence unlawful unless so framed in its inception that its force will be stayed within reasonable limits, so far at least as they are susceptible of prevision and description. When once those limits have been reached, the fetters should fall off." *Id.* at 257, 57 S.Ct. at 167. The granting of indefinite stays should not be a quotidian exercise. But for purposes of deciding whether to issue a writ of mandamus at this time, we do not yet discern that the

district court has shown an intractable aversion to unlocking appellant's fetters.

APPEAL DISMISSED.

we are not yet presented with circumstances that warrant our own sua sponte exercise of supervisory discretion. A claim that might have succeeded on a proper appeal does not necessar-ily merit a writ of mandamus. *Will v. Calvert Fire Ins. Co.,* 437 U.S. 655, 665, 98 S.Ct. 2552, 2558, 57 L.Ed.2d 504 (1978) (plurality opinion); *see also Moses H. Cone,* 103 S.Ct. at 938.