**METROPOLITAN LIFE INSURANCE COMPANY, Robert J. Crimmins, Harry P. Kamen, Frank Lynch, Richard Mandell, Charles Sahner, Steven F. Branton, Wayne Guest, and Jere Chandler, Relators,**

v.

**The Honorable Tony LINDSAY, Judge of the 280th District Court of Harris County, Texas, Respondent.**

**No. 01–95–00603–CV.**

Court of Appeals of Texas, Houston (1st Dist.).

Jan. 29, 1996.

Rehearing Overruled Feb. 29, 1996.

---

Carl Jordan, Anne M. Pike, Randall Wilson, Houston, for appellant.

Craig Lewis, Houston, for appellees.

Before ANDELL, COHEN and WILSON, JJ.

## OPINION

ANDELL, Justice.

The issue presented by this petition is whether the trial court abused its discretion by denying relators' motion to compel arbitration under the Federal Arbitration Act[1] (FAA).

## I. BACKGROUND

The relator, Metropolitan Life Insurance Company (MetLife), is a mutual insurance company and several of its executives. The real parties in interest are all former MetLife salesmen (the employees). In their petition, the employees allege that MetLife created a scheme to market life insurance as a "savings plan" or a "retirement plan" without ever mentioning the term "life insurance." The petition alleges that some of the employees were fired when they questioned or threatened to "blow the whistle" on the sales

---

[1]. 9 U.S.C.A. § 1 (West 1970).

technique program. Some of the employees claim that they were financially ruined when MetLife turned on them and accused them of improper marketing practices. The employees' petition states causes of action for fraud, conversion, defamation, tortious interference with contract, civil conspiracy, intentional infliction of emotional distress, negligence, gross negligence, unjust enrichment, and breach of contract.

## II. STANDARD OF REVIEW

■ A writ of mandamus will issue only to correct a clear abuse of discretion or violation of a duty imposed by law when that abuse cannot be remedied by appeal. *Walker v. Packer,* 827 S.W.2d 833, 840 (Tex.1992). A trial court abuses its discretion when it reaches a decision so arbitrary and unreasonable as to amount to a clear and prejudicial error of law. *Johnson v. Fourth Court of Appeals,* 700 S.W.2d 916, 917 (Tex.1985). The relator must establish, under the circumstances of the case, that the facts and law permit the trial court to make but one decision. *Id.* There is no right of interlocutory appeal under the FAA; thus, review by petition for writ of mandamus is appropriate. *Jack B. Anglin Co., Inc. v. Tipps,* 842 S.W.2d 266, 271–72 (Tex.1992).

■ There is a strong national policy favoring arbitration. *Life of Am. Ins. Co. v. Aetna Life Ins. Co.,* 744 F.2d 409, 412–13 (5th Cir.1984). Questions of arbitrability must be addressed with a healthy regard for the federal policy favoring arbitration. *Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp.,* 460 U.S. 1, 24, 103 S.Ct. 927, 941, 74 L.Ed.2d 765 (1983). An order to arbitrate a particular grievance should not be denied unless it can be said with "positive assurance" that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. *United Steelworkers v. Warrior & Gulf Navigation Co.,* 363 U.S. 574, 582–83, 80 S.Ct. 1347, 1353, 4 L.Ed.2d 1409 (1960). Any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration. *Moses H. Cone,* 460 U.S. at 24–25, 103 S.Ct. at 941; *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Lon-*

*goria,* 783 S.W.2d 229, 230 (Tex.App.—Corpus Christi 1989, no writ).

## III. THE ARBITRATION CLAUSES

■ Twenty-eight of 31 employees are registered with the National Association of Securities Dealers (NASD) and executed a Form U–4 agreement that contains the following arbitration clause:

> I agree to arbitrate any dispute, claim or controversy that may arise between me and my firm, or a customer, or any other person, that is required to be arbitrated under the rules, constitutions, or by-laws of the organizations with which I register, as indicated in Item 10 as may be amended from time to time....

Because the employees are registered with the NASD, the rules of that organization govern which disputes must be resolved by arbitration. The NASD Code of Arbitration Procedure provides for arbitration of:

> any dispute, claim, or controversy arising out of or in connection with the business of any member of the Association, or arising out of the employment or termination of employment of associated person(s) with any member, *with the exception of disputes involving the insurance business of any member which is also an insurance company:*
> (1) between or among members;
> (2) between or among members and associated persons;
> (3) between or among members or associated person and public customers, or others;....

*NASD Code* § 1 (emphasis added).

The NASD Code also provides that an arbitrable matter under the section above must be arbitrated at the request of a member (such as MetLife):

> Any dispute, claim, or controversy eligible for submission under part I of this Code between or among members and/or associated persons, and/or certain others, arising in connection with the business of such member(s) or in connection with the activities of such associated person(s), or arising out of the employment or termination of employment of such associated person(s)

with such member, *shall be arbitrated* under this Code, at the instance of:

(1) a member against another member;

(2) a member against a person associated with a member or person associated with a member against a member; and

(3) a person associated with a member against a person associated with a member. . . .

*NASD Code* § 8(a) (emphasis added).

## IV. THE HEARING

The trial court held a hearing on MetLife's motion to compel arbitration on May 4, 1995. At the hearing, the employees argued that their claims were not arbitrable because they fell within the *insurance exception* of § 1 of the NASD Code. The employees contended that the insurance exception applies because the case deals with how MetLife marketed and sold insurance. The trial court denied the motion to compel arbitration without assigning any reason for doing so.

## V. THE ISSUES

This case presents two major issues: (1) Are the plaintiffs who signed the Form U–4 (the signatory plaintiffs) required to arbitrate their claims against MetLife, and (2) should the case of the plaintiffs who did not sign the Form U–4 (the nonsignatory plaintiffs) be stayed pending resolution of the arbitration proceedings?

### 1. Is arbitration required for the signatory plaintiffs?

MetLife argues that this case is not covered by the insurance exception because it is essentially an employment dispute, not litigation over its insurance practices. MetLife admits that this suit involves its insurance practices, but argues that the **ultimate issue** is whether it treated its employees fairly.

The plaintiffs respond that the entire basis of their lawsuit concerns MetLife's insurance practices. They argue, therefore, that the insurance exception applies and arbitration is not required. The plaintiffs cite no cases to

support their interpretation, but rely instead on the plain language of the insurance exception.

No Texas case has interpreted the insurance exception, but several federal courts have addressed the issue.[2] In *Killion v. MetLife*, CA 3:94–CV–1536–R, slip op. at 7 (N.D.Tex. Nov. 23, 1994), the plaintiff was a branch manager who was fired by MetLife. An issue in the case was a marketing plan by MetLife that targeted health care professionals. Killion argued that the insurance exception applied. The trial court rejected the argument and stated, "Plaintiff cites no authority for his position, which has been rejected in other courts." *Id.*

In *Voith v. MetLife*, No. 4:CV–94–0364, slip op. at 11–12 (M.D.Pa. Dec. 6, 1994), the plaintiff sued MetLife for defamation after a representative for MetLife was quoted as saying that the plaintiff was fired for "improperly representing life insurance as retirement plans." The plaintiff claimed that the insurance exception applied because his defamation claim was based upon MetLife's alleged unlawful insurance practices. The court held that the actual basis for his defamation claim related to his employment and was subject to arbitration. *Id.*

In *Young v. MetLife*, CA No. 94–3274, slip op. at 2 (E.D.Pa. Sept. 12, 1994), the plaintiff alleged that he was wrongfully discharged after he reported fraudulent insurance practices by MetLife. The court held that the insurance exception did not apply because plaintiff's claims stemmed from the alleged conduct of his supervisors in discharging him after he questioned their business practices. The court further found that the "crux of this matter is an employment dispute that falls within the scope of the arbitration agreement." *Id.*

In *Trumbetta v. Metropolitan Life Ins. Co.*, CA No. 94–3275, slip op. at 6 n. 3, 7, 1994 WL 481152 (E.D.Pa. Sept. 1, 1994), the plaintiff, a sales agent for MetLife, sued the company for wrongful discharge, defamation, and several other causes of action. The

---

**2.** We note that most of the cases that address this issue are unreported opinions from the federal district courts and are not binding authority.

However, we have reviewed those opinions and find their reasoning persuasive.

plaintiff claimed that the insurance exception applied. The court rejected that argument, stating:

> While it is true that the plaintiff makes some general allegations in the complaint that MetLife is engaging in certain unlawful insurance practices, the basis of his claims stem from actions taken by the defendants against the plaintiff since he did not participate in their alleged scheme. Thus, whether or not the defendants actually engaged in any unlawful insurance practices is irrelevant to this dispute. The thrust of plaintiff's complaint is that the defendants harassed and persecuted him such that he lost business and this ultimately was constructively discharged [sic].
>
> . . . .
>
> Although the plaintiff in this case made some general allegations concerning the defendant's business practices, I find that the actual basis for each of his claims is the conduct of his supervisors that led to his constructive discharge. Thus, I find that the plaintiff's claims all relate to his employment and termination and are subject to arbitration.

*Id.*

We agree with the reasoning of the cases cited above. This case is essentially an employment dispute, not a case about MetLife's insurance business. At a trial on the merits, the trial court will not necessarily be required to determine whether the marketing practices were in fact illegal; rather, the court must decide whether MetLife required the plaintiffs to follow the marketing practices or whether the plaintiffs followed these practices without authority from MetLife. Thus, the primary issue is how MetLife treated its employees. MetLife's marketing practices are only a secondary issue.[3]

Therefore, we find that the trial court abused its discretion by denying MetLife's motion to compel arbitration.

## 2. Should the proceedings of the nonsignatory plaintiffs be stayed during arbitration?

MetLife also contends the trial court abused its discretion by refusing to stay the case of the nonsignatory plaintiffs while the arbitration with the signatory plaintiffs is pending. The issue this Court must decide is whether section 3 of the FAA[4] mandates a stay of the entire case in this situation, or whether a stay is discretionary.

There is a split in the federal courts of appeal on this issue. MetLife urges us to follow the example of the Seventh Circuit, which has held that section 3 *requires* a stay of the entire case, even as to parties who have not signed an arbitration agreement. *See Morrie Mages & Shirlee Mages Found. v. Thrifty Corp.*, 916 F.2d 402, 407 (7th Cir. 1990). The Fifth Circuit, however, has held that section 3 does not apply to parties who are not contractually bound by an arbitration agreement, though the court in its *discretion* may order a stay of the entire case. *See Complaint of Hornbeck Offshore Corp.*, 981 F.2d 752, 755 (5th Cir.1993).

### a. Seventh Circuit cases

In *Morrie Mages*, the purchaser of a small business who had agreed to arbitrate disputes with the seller instead sought to avoid arbitration by filing suit against the seller's affiliate, which had signed as a guarantor. The guarantor, though not a party to the arbitration agreement, moved for a stay under section 3. The Seventh Circuit held that section 3 required a stay of the entire action

---

3. We note that the employees' petition does not state a cause of action for wrongful discharge for failure to perform an illegal act. *See Hauck v. Sabine Pilots, Inc.*, 672 S.W.2d 322, 323–24 (Tex. App.—Beaumont 1984). Therefore, we need not decide whether such a case would be an employment dispute or a suit about insurance.

4. Section 3 states:
   If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration.
   9 U.S.C.A. § 3 (West 1970).

even though the guarantor was not a party to the arbitration agreement.

> Section 3 of the FAA plainly requires that a district court stay litigation where *issues* presented in the litigation are the subject of an arbitration agreement.
>
> . . . .
>
> [The guarantor], as a party to litigation involving issues subject to an arbitration agreement, is entitled to a stay under section 3 of the FAA regardless of its status as a party to the arbitration agreement.

*Morrie Mages*, 916 F.2d at 407.

In *Kroll v. Doctor's Assocs.*, 3 F.3d 1167, 1169 (7th Cir.1993), the plaintiff was the franchisee of a "Subway" sandwich shop who sued the franchisor and an employee of the franchisor. There was an arbitration agreement between the franchisee and the franchisor, but the employee was not a party to that agreement. The court held that the employee was nonetheless entitled to a stay under § 3.[5]

In *Fox v. Stratton Oakmont Inc.*, No. 93 C 2228, slip op. at 11–12, 1993 WL 433777 (E.D.Ill. Oct. 22, 1993), two plaintiffs (Fox and Fox, Ltd.) sued the defendants over the defendants' handling of their brokerage accounts. There was an arbitration agreement between Fox and the defendants, but Fox, Inc. was not a party to that agreement. The court held that section 3 required a stay of litigation where the issues presented in the litigation are the subject of an arbitration agreement, even as to parties to the litigation that are not also parties to the arbitration agreement. *Id.* The court noted that the result was particularly appropriate where "the plaintiff that is required to arbitrate and the second plaintiff that is not so bound share the same complaint with the same issues." *Id.*

### b. Fifth Circuit cases

In *Complaint of Hornbeck*, 981 F.2d at 753, Tunisia chartered a barge and tow from Coastal who, in turn, chartered the tow from Hornbeck. The Coastal/Hornbeck charter contained an agreement to arbitrate. While under tow in the Atlantic Ocean, the barge sank. Hornbeck filed an action in federal court under the Limitation of Liability Act.[6] Tunisia filed a claim for its lost cargo in Hornbeck's limitation action, and Coastal filed a claim for indemnity and contribution from Hornbeck. *Id.* The Fifth Circuit held that section § 3 did not require a stay of Tunisia's claim against Hornbeck because Tunisia was not a party to the arbitration agreement. *Id.* at 755.

> Because [Tunisia] is not a party to the arbitration clause in issue, however, its claims against Hornbeck are unaffected by any stay granted under § 3. Accordingly, we do not address its contentions regarding the § 3 stay. We note, however, that on remand, it will lie within the district court's discretion to stay the claims between the nonarbitrating parties pending outcome of the arbitration simply as a means of controlling its docket.

*Complaint of Hornbeck*, 981 F.2d at 755 (citations omitted).

In *Matter of Talbott Big Foot, Inc.*, 887 F.2d 611 (5th Cir.1989), the decedent was killed aboard a ship owned by Patterson. Patterson filed a limitation action and the decedent's family filed claims in the proceeding. The plaintiffs also filed a direct action against Patterson's insurer. Although there was an arbitration agreement in the insurance policy between Patterson and the insurer, the plaintiffs were not parties to that agreement. The Fifth Circuit held that sec-

---

**5.** The *Kroll* court noted that in *Morrie Mages*, the nonarbitrating party's liability was derivative, *i.e.*, the guarantor would not be liable unless the guarantee (a party to the arbitration agreement) was liable. In *Kroll*, the nonarbitrating employee's liability was not derivative. Nevertheless, the *Kroll* court decided that the case against the nonarbitrating employee should be stayed because the suit involved an "issue referable to arbitration."

**6.** 46 U.S.C.A.App. §§ 181–195 (West 1958 & Supp.1995). The Act allows a shipowner to limit its liability for damage arising from a maritime casualty to the value of the vessel together with her pending freight, if the casualty occurs without the privity or knowledge of the shipowner. 46 U.S.C.A. § 183(a) (West 1958). After the shipowner files a limitation action, the limitation court stays all related claims against the shipowner and requires all claimants to assert their claims in the limitation action.

tion 3 did not require a stay of the plaintiffs' case pending resolution of the arbitration. *Id.* at 614.

> [The FAA] does not require arbitration unless the parties to a dispute have agreed to refer it to arbitration. Likewise, the mandatory stay provision of the Act does not apply to those who are not contractually bound by the arbitration agreement. Obviously, the [plaintiffs], who are not parties to the [insurer's] policy, have not agreed to arbitrate their claims or defer their action while the insurer and insured arbitrate coverage disputes. Thus, the Federal Arbitration Act, the source of the federal policy favoring arbitration, has no application to require [plaintiffs] to arbitrate or to stay their lawsuits.

*Matter of Talbott Big Foot,* 887 F.2d at 614. However, the court noted that although a mandatory stay was not required, a discretionary stay may be appropriate. *Id.*

In *Coastal (Bermuda) Ltd. v. E.W. Saybolt & Co.,* 761 F.2d 198 (5th Cir.1985), the district court on its own motion stayed the plaintiff's case against a defendant who was not a party to the arbitration agreement at issue. Though the appeal was dismissed for lack of jurisdiction, the Fifth Circuit addressed the propriety of the district court's stay order.

> [S]ince this case does not present any issues referable to arbitration under an agreement between Coastal and Saybolt, § 3 cannot be the source of the district court's authority to stay a claim between those parties. "[T]he arbitrability of a dispute is to be decided by the courts on the basis of the contract entered into *by the parties.*"

*Coastal (Bermuda) Ltd.,* 761 F.2d 198, 203 n. 6 (citations omitted). The court also noted that the district court, *in its discretion,* could stay the case, but cautioned that a discretionary stay should be granted only in cases of "genuine necessity." *Id.*

The Fifth Circuit opinions appear more in line with the direction of the United States Supreme Court. In *Moses H. Cone Mem.*

*Hosp. v. Mercury Const.,* 460 U.S. 1, 20, 103 S.Ct. 927, 939, 74 L.Ed.2d 765 (1983) the Court stated:

> Under the Arbitration Act, an arbitration agreement must be enforced notwithstanding the presence of other persons who are parties to the underlying dispute but not to the arbitration agreement.
>
> . . . .
>
> In some cases, of course, it may be advisable to stay litigation among the nonarbitrating parties pending the outcome of the arbitration. *That decision is one left to the district court (or the state trial court under applicable state procedural rules) as a matter of its discretion to control its docket.*

*Moses H. Cone,* 460 U.S. at 20 n. 23, 103 S.Ct. at 939 n. 23 (emphasis added).

As we stated earlier, mandamus is appropriate only if the facts and the law allow but one decision. The existing law on this issue gave the trial judge two options: (1) follow the Seventh Circuit and stay the entire case pending resolution of the arbitration, or (2) follow the Fifth Circuit and allow the nonsignatory plaintiffs to continue their lawsuit against MetLife. We cannot say the district court abused its discretion by refusing to stay the litigation of the nonsignatory plaintiffs.[7]

We conditionally grant the writ of mandamus. We order the trial court to vacate its order of May 4, 1995, and to enter an order compelling arbitration between MetLife and the signatory plaintiffs. We are confident that the respondent will comply with this order, and a writ of mandamus will issue only if she fails to do so.

---

**7.** Of course, nothing in this opinion will prohibit the trial court from reconsidering a discretionary stay on remand.