provided for beneficiaries. Count II is, therefore, dismissed.

---

Thomas H. Walsh, Jr., John J. Finn, Marianne Meacham, Bingham, Dana & Gould, Boston, Mass., Gordon Cleary, Vetter & White, Providence, R.I., for plaintiff.

Michael Rubin, Atty. General's Office, Providence, R.I., for defendant.

**In the Matter of the Complaint of BALLARD SHIPPING COMPANY for Exoneration from or Limitation of Liability.**

**Civ. A. No. 89–0685L.**

United States District Court,
D. Rhode Island.

Sept. 17, 1991.

## MEMORANDUM AND ORDER

LAGUEUX, District Judge.

## I. INTRODUCTION

This matter is before the Court on the Plaintiff's motion, under Fed.R.Civ.P. 12(b)(6), to dismiss the Fourth Claim for Relief of Claimants James E. O'Neil and Robert L. Bendick, Jr. ("Fourth Claim"),

for failure to state a claim upon which relief can be granted. Plaintiff, Ballard Shipping Co ("Ballard"), is the owner of the ship M/V WORLD PRODIGY, which struck Brenton Reef off the coast of Newport, Rhode Island, on June 23, 1989, spilling a substantial portion of its cargo of heating oil. James E. O'Neil is the Attorney General and Environmental Advocate for the State of Rhode Island, and Robert L. Bendick, Jr., was Rhode Island's Director of Environmental Management and Trustee of Natural Resources when the Claim was filed. Louise Durfee is now in that position and should be substituted for Bendick as a Claimant. The procedural background of this suit is set forth in *In re Ballard Shipping Co.*, 752 F.Supp. 546, 547 (D.R.I.1990).

Claimants' Fourth Claim asserts that the M/V PRODIGY's oil spill gives the State of Rhode Island a cause of action against Ballard under the oil and hazardous substance liability section of the Federal Water Pollution Control Act ("FWPCA"), as amended by the Clean Water Act of 1977, 33 U.S.C. § 1321 (1988). Ballard argues that this section of the FWPCA confers a cause of action only on the federal government, and not to states. Ballard's interpretation is correct. Accordingly, Ballard's Motion is granted, and Claimants' Fourth Claim is dismissed.

## II.  DISCUSSION

■ The Fourth Claim rests on section 311 of the FWPCA, as amended by the Clean Water Act of 1977, 33 U.S.C. § 1321 (1988). This statute's somewhat ambiguous language has engendered confusion in this lawsuit about whether it supports a right of action by a state against a shipowner. This Court must now interpret the words of the statute to determine what Congress intended. While understanding how the Claimants could view some of the FWPCA's terms as favoring a cause of action by Rhode Island, this Court concludes that the statute does not give individual states a cause of action.

The analysis begins with a recitation of the statute's relevant terms. At the time of the incident,[1] section 311(f) provided:

(1) Except where an owner or operator can prove that a discharge was caused solely by (A) an act of God, (B) an act of war, (C) negligence on the part of the United States Government, or (D) an act or omission of a third party without regard to whether any such act or omission was or was not negligent, or any combination of the foregoing clauses, such owner or operator of any vessel from which oil or a hazardous substance is discharged in violation of subsection (b)(3) of this section shall, notwithstanding any other provision of law, be liable *to the United States Government* for the actual costs incurred under subsection (c) of this section for the removal of such oil or substance *by the United States Government* in an amount not to exceed, in the case of ... [any vessel other than an inland oil barge], $150 per gross ton of such vessel (or, for a vessel carrying oil or hazardous substances as cargo, $250,000), whichever is greater, except that where the United States can show that such discharge was the result of willful negligence or willful misconduct within the privity and knowledge of the owner, such owner or operator shall be liable *to the United States Government* for the full amount of such costs.... *The United States* may also bring an action against the owner or operator of such vessel in any court of competent jurisdiction to recover such costs.

33 U.S.C. § 1321(f)(1) (1988) (emphasis added). Subsection (b)(3), to which subsection (f)(1) refers, provides:

(3) The discharge of oil or hazardous substances ... into or upon the navigable waters of the United States, adjoining shorelines, or into or upon the waters of the contiguous zone ... is prohibited....

---

1. Congress recently modified the statutory scheme governing the parties' liabilities under the Fourth Claim, with the Oil Pollution Act of

1990, Pub.L. No. 101–380, 104 Stat. 484, 523–37, 540–41 (1990). These recent changes do not apply to the current controversy.

33 U.S.C. § 1321(b)(3) (1988). Section 311(f)(4) states:

> (4) The costs of removal of oil or a hazardous substance for which the owner or operator of a vessel or onshore or offshore facility is liable under subsection (f) of this section shall include any costs or expenses incurred *by the Federal Government or any State government* in the restoration or replacement of natural resources damaged or destroyed as a result of a discharge of oil or a hazardous substance in violation of subsection (b) of this section.

33 U.S.C. § 1321(f)(4) (1988) (emphasis added). Section 311(f)(5) adds:

> (5) The President, *or the authorized representative of any State,* shall act on behalf of the public as a trustee of the natural resources *to recover* for the costs of replacing or restoring such resources. Sums recovered shall be used to restore, rehabilitate, or acquire the equivalent of such natural resources by the appropriate agencies of the Federal Government, or the State government.

33 U.S.C. § 1321(f)(5) (1988) (emphasis added). Finally, section 311 defines "United States" to mean:

> *the States,* the District of Columbia, the Commonwealth of Puerto Rico, the Commonwealth of the Northern Mariana Islands, Guam, American Samoa, the Virgin Islands, and the Trust Territory of the Pacific Islands.

33 U.S.C. § 1321(a)(5) (1988) (emphasis added).

Claimants argue that the statute's broad, "pre-civil war" definition of "United States"—meaning the several states and territories—when applied to subsection (f)(1), gives Rhode Island a cause of action. Claimants also argue that the provisions in subsection (f)(4), measuring liability to include costs incurred by a state government, and subsection (f)(5), requiring a state's authorized representative to act as a trustee to recover costs of restoration, confirm that states have standing under section 311 of the FWPCA to sue the shipowner.

■ But this selective reading of the statute misses more direct language that only supports a cause of action by the federal government. The language of the statute must be given its ordinary meaning, absent clear legislative intent to the contrary, *Consumer Product Safety Comm'n v. GTE Sylvania, Inc.,* 447 U.S. 102, 108, 100 S.Ct. 2051, 2056, 64 L.Ed.2d 766 (1980), and this Court must be chary of reading into the statute any remedies that are not expressly stated there, *Middlesex County Sewerage Auth. v. Nat'l Sea Clammers Ass'n,* 453 U.S. 1, 14–15, 18, 101 S.Ct. 2615, 2623–24, 2625, 69 L.Ed.2d 435 (1981). A common-sense reading of the statute compels the conclusion that states have no standing to sue under section 311. Subsection (f)(1) plainly makes shipowners and operators liable only "to the United States Government" for costs incurred during the removal of oil. 33 U.S.C. § 1321(f)(1) (1988). The last sentence of this section adds: "The United States may also bring an action against the owner or operator of such vessel...." *Id.* "United States Government" and "United States" mean the federal government.

The broad definition of "United States" in subsection (a)(5)—which includes the several states but conspicuously leaves out the federal government—would make little sense if it were applied to this context, as Claimants propose. To apply the broad definition set forth in subsection (a)(5) wherever the term "United States" appears in section 311 would be folly. For example, "district court of the United States," 33 U.S.C. § 1321(b)(6)(B) (1988), can mean nothing but the federal district courts. The meaning of "United States" in this context is obvious, and no one would suggest that it includes the states.

The broad definition in subsection (a)(5) relates, not to the courts empowered with jurisdiction or the sovereigns that have standing to sue, but to the geographical scope of potential liability under section 311 of the FWPCA. *See, e.g.,* 33 U.S.C. §§ 1321(a)(10), (a)(11), (a)(15), (a)(16), (b)(1), (b)(2)(A), (b)(3), and (b)(4). Thus, an oil spill in the Trust Territory of the Pacific Islands may touch the "United States" and create liability under the FWPCA, but the Trust

Territory of the Pacific Islands must rely on the "United States Government"—the appropriate federal authorities—to bring suit under Section 311.

Congress could have given the states explicit, separate authority to bring suit under section 311, but it did not. In other parts of this section, Congress recognized a distinction between the "United States" and "a State or political subdivision thereof." *E.g.,* 33 U.S.C. § 1321(a)(4) (1988). This distinction indicates that, subsection (a)(5) notwithstanding, Congress did not intend to include the several states every time it used the words "United States" in section 311. When Congress intended to include the governments of the several states, it explicitly spoke of states in addition to the "United States."

Additional linguistic clues support this conclusion. Congress conferred this right of action on a capitalized and singular United States *"Government,"* instead of the lower-case and plural *"governments."* 33 U.S.C. § 1321(f)(1) (1988). Had Congress used the word "governments," this arguably could have suggested an investment in the states of authority to bring suit under the FWPCA. But Congress chose a more restrictive word. Other usage of "United States" in section 311—such as the phrases "subject to the jurisdiction of the United States," "United States citizenship," and "international agreement to which the United States is a party," 33 U.S.C. § 1321(a)(17) (1988)—provides even more evidence that Congress assigned "United States" its ordinary meaning, except when describing the geographic scope of liability under section 311.

While ambiguity may exist, "United States" and "United States Government" can mean only one sovereign in the context of subsection (f)(1), and that is the federal government.

The language of subsections (f)(4) and (f)(5) does not require a different interpre-tation. Subsection (f)(4) merely defines the shipowner's measure of liability to include certain expenses incurred by state governments. 33 U.S.C. § 1321(f)(4) (1988); *see also* H.R.Rep. No. 830, 95th Cong., 1st Sess. 92 (1977), *reprinted in* 1977 *U.S.C.C.A.N.* 4326, 4424, 4467. It does not expressly or by implication grant a right of action to states. An aggrieved state must rely on the appropriate federal agency to bring suit against the shipowner and recover the state's damages under this statute.

Similarly, although subsection (f)(5) requires a state's authorized representative to act as a trustee to "recover" damages from violators who befoul the state's natural resources, 33 U.S.C. § 1321(f)(5) (1988), nothing in this subsection implies a right of action by the states. It is inconceivable that Congress could have intended subsection (f)(5) to create a cause of action for states, when the statute does not explicitly set forth a separate cause of action for states, and the statute's legislative history does not even hint at one. *See* S.Rep. No. 370, 95th Cong., 1st Sess. 64 (1977), *reprinted in* 1977 *U.S.C.C.A.N.* 4326, 4389; H.R.Rep. No. 830, 95th Cong., 1st Sess. 92 (1977), *reprinted in* 1977 *U.S.C.C.A.N.* 4326, 4424, 4467. Instead, subsection (f)(5) is a *restriction* upon the states. Subsection (k)(1)[2] authorizes the creation of a revolving fund for the purposes of section 311, and subsection (c)(2)(H)[3] contemplates a system by which states may be reimbursed from this fund. Subsection (f)(5) merely restricts the purposes to which a state may direct any awards it collects by way of reimbursements from the federal government.

Counsel for both sides cite conflicting language in different prior decisions interpreting subsection (f). Ballard points to *In re Oswego Barge Corp.,* 673 F.2d 47 (2d Cir.1982). In that case, a barge owner filed a petition for exoneration from or limitation of liability arising out of an oil spill that resulted when the barge ground-

---

**2.** Repealed by the Oil Pollution Act of 1990, Pub.L. No. 101–380, Title I, § 2002(b)(2), 104 Stat. 484, 507 (1990). Subsection (k), as it existed at the time of the incident, remains relevant to this decision.

**3.** Modified by the Oil Pollution Act of 1990, Pub.L. No. 101–380, § 4201(a), 104 Stat. 484, 523–25 (1990).

ed in the St. Lawrence Seaway. The United States Court of Appeals for the Second Circuit held that section 311 of the FWPCA gave the federal government its sole remedy against shipowners for cleanup costs, thus excluding any common law remedies. *Id.* at 49. The Court explained that section 311 "makes explicit mention of the United States; its only purpose is to create a precise remedy *solely for the United States* to recover specified damages pursuant to a carefully devised formula." *Id.* at 48 (emphasis added). Ballard argues that this statement is judicial recognition that the federal government is the sole repository of a right of action against the shipowner.

Claimants cite *In re Allied Towing Corp.,* 478 F.Supp. 398 (E.D.Va.1979), as support for their interpretation that section 311 of the FWPCA creates a cause of action for states. In that case, a barge owner filed a petition for exoneration from or limitation of liability arising out of an oil spill resulting from the barge's grounding in Chesapeake Bay. The United States District Court for the Eastern District of Virginia ruled that the FWPCA, as modified by the Clean Water Act of 1977, does not preempt remedies available under state law. *Id.* at 404. The Court noted in its opinion:

> Section 311(f)(5) specifically empowers the "authorized representative of any state" to recover [restoration and replacement] costs, which section 311(f)(4) includes among the costs for which the vessel owner or operator shall be liable. Thus, section 311(f), as amended, provides the states with an alternative federal remedy.... States without a specific oil-spill statute are thereby saved the trouble of proving negligence, while states with such a statute may avail themselves of this federal alternative.

*Id.* at 402–03.

After careful study of both these decisions, this Court concludes that the question of whether section 311 grants states a right of action was not involved in either case. Any references to that point in these cases is pure dicta. The *Allied Towing* opinion dealt only with the question of fed-

eral preemption of state remedies by the Clean Water Act. That Court's construction of section 311 was gratuitous, and its analysis focused only on the words of subsection (f)(5), neglecting the more important language of subsection (f)(1). Similarly, although this Court agrees with *Oswego Barge's* ultimate interpretation of section 311, this Court does not need to rely on *Oswego Barge* as a foundation for the conclusions expressed in this decision.

Finally, Claimants asserted in oral argument that *Ohio v. United States Dep't of Interior,* 880 F.2d 432, 439 (D.C.Cir.1989), interprets section 311 as authorizing states to press claims against shipowners. In *Ohio,* the United States Court of Appeals for the D.C. Circuit reviewed regulations promulgated by the Department of the Interior under the Comprehensive Environmental Response, Compensation and Liability Act of 1980, as amended, 42 U.S.C. § 9651(c). The case did not directly address the FWPCA. The *Ohio* opinion is neither relevant nor binding on this Court.

None of these three opinions can substitute for an examination of the words of the statute, and the language of section 311, while unclear, allows no alternative conclusion. The FWPCA gives a cause of action only to the federal government.

### III. CONCLUSION

Accordingly, Ballard's motion, under Fed.R.Civ.P. 12(b)(6), to dismiss Claimants' Fourth Claim for Relief is hereby granted.

*It is so ordered.*