In the Matter of MONTAUK OIL TRANS-PORTATION CORP., as Owner of the Barge CIBRO SAVANNAH, Plaintiff and Third–Party Plaintiff,

For Exoneration from or Limitation of Liability

v.

The STEAMSHIP MUTUAL UNDER-WRITING ASSOCIATION (BERMUDA) LIMITED, Third–Party Defendant.

No. 90 Civ. 5702 (KMW).

United States District Court, S.D. New York.

April 8, 1994.

Opinion Declining to Modify Holdings on Reconsideration Aug. 24, 1994.

---

## MEMORANDUM OPINION AND ORDER

KIMBA M. WOOD, District Judge.

This action was brought by Montauk Oil Transportation Corporation ("Montauk") pursuant to 46 U.S.C.App. 183 *et seq.,* to limit liability for damages resulting from a series of explosions and an oil spill aboard the vessel CIBRO SAVANNAH. The court has jurisdiction over the action pursuant to 28 U.S.C. § 1333. Third-party defendant Steamship Mutual Underwriting Association (Bermuda) Limited ("Steamship" or "the Club") moves to dismiss a third-party complaint filed by Montauk, which demands judgment against Steamship in favor of the United States and the States of New York and New Jersey pursuant to Federal Rule of Civil Procedure 14(c). Steamship argues that the third-party complaint fails to state a claim upon which relief may be granted. Alternatively, Steamship moves for an order staying the third-party action pending the

outcome of arbitration between Montauk and Steamship in London, pursuant to the Federal Arbitration Act, 9 U.S.C. § 3 *et seq.*, and the Convention on the Recognition and Enforcement of Foreign Arbitral Awards, 9 U.S.C. § 201 *et seq.* For the reasons stated below, Steamship's motion to dismiss is granted, to the extent that the third-party complaint demands judgment against Steamship in favor of the States of New York and New Jersey; this portion of the complaint is dismissed without prejudice to Montauk's right to amend. Steamship's motion is denied, to the extent that the third-party complaint demands judgment against Steamship in favor of the United States. Steamship's motion to stay the third-party action pending arbitration is denied.

### Background

Steamship is a Bermuda-based association of shipowners known as a protection and indemnity club, providing marine protection and indemnity insurance to its members. Montauk is the owner and operator of the tank barge CIBRO SAVANNAH, which for several years was covered by Steamship for protection and indemnity risks. Montauk renewed its membership with Steamship on February 20, 1990, for the 1990–91 policy year.

Among the risks for which the CIBRO SAVANNAH was insured were risks of liability arising from pollution due to oil spills. Under the Federal Water Pollution Control Act, 33 U.S.C. § 1321 ("FWPCA" or "the Act"), all tanker owners are required to carry insurance for pollution liabilities imposed by the Act. Subsection 311(p)(1) of the Act (now repealed) [1] requires tanker operators to establish and maintain "evidence of financial responsibility" sufficient to meet potential liabilities. 33 U.S.C. § 1321(p)(3). Pursuant to regulations promulgated under the Act, evidence of financial responsibility may take the form of a "certificate of financial responsibility" issued by the insurer to the United States, in which the insurer certifies directly to the United States that the vessel identified

in the certificate is insured up to the statutory limit. 33 C.F.R. 130.51. Subsection 311(p)(3) of the Act authorizes a direct action against the insurer for "any claim for costs" for which the insured vessel is responsible under the Act. In addition, the certificate, the form of which is dictated by the regulation, includes a statement that the insurer "consents to be sued directly in respect of any claim against any of the operators arising under subsections 311(f) and (g) of the Act." *Insurance Form CG–5358–9 Furnished as Evidence of Responsibility Under Subsection 311(p) of the Water Pollution Control Act, as Amended* (hereinafter *Form CG–5358–9* ). Termination of the undertaking represented by the certificate becomes effective "30 days after the date of receipt of written notice by the U.S. Coast Guard (USCG) that the Insurer has elected to terminate the insurance evidenced by this undertaking, and has so notified the vessel operator." *Id.*. Steamship provided a certificate of financial responsibility ("the Certificate") to the United States on behalf of Montauk's CIBRO SAVANNAH on February 20, 1986.

On March 6, 1990, a series of explosions took place on the CIBRO SAVANNAH, causing an oil spill into the waters of the Arthur Kill between New York and New Jersey. Shortly thereafter, Steamship informed Montauk that Montauk's insurance was void as of its renewal on February 20, 1990, due to Montauk's alleged failure to disclose a material fact at that time. Steamship notified the Coast Guard of the termination on June 13, 1990.

On June 4, 1990, Montauk brought suit against Steamship in the United States District Court for the Southern District of New York, contesting the retroactive cancellation of its insurance and seeking recovery under the policy for clean-up costs incurred as a result of the March oil spill. 90 Civ. 3792 (DNE). In response, Steamship filed a motion to stay the action pending arbitration, arguing that Montauk was bound by a Club

---

1. Subsection 311(p)(3) of the Act, codified at 33 U.S.C. § 1321(p)(3), was repealed by Congress as part of the Oil Pollution Act of 1990. Pub.L. No. 101–380, § 2002(b)(4), 104 Stat. 484 (Aug. 18,

1990). The repeal occurred after the incident at issue in this case, and the parties agree that subsection 311(p)(3) governs this dispute.

rule requiring that disputes between Steamship and its members be submitted first, to Steamship's directors, and then to arbitration. Judge Edelstein granted Steamship's motion on March 20, 1991. *Montauk Oil Transport Corp. v. Steamship Mutual Underwriting Ass'n (Bermuda) Ltd.*, 1991 WL 41657 at * 1–2 (S.D.N.Y.).[2]

On September 5, 1990, Montauk initiated this limitation of liability proceeding, pursuant to 46 U.S.C.App. § 183 and Rule F of the Supplemental Rules Governing Admiralty and Maritime Claims. Section 183 authorizes the owner of a vessel to limit its liability for losses incurred without its "privity or knowledge" to an amount equal to its interest in the vessel. Pursuant to Rule F(4), an Order was issued by this court on September 5, 1990, giving notice of the proceeding to potential claimants and ordering them to file their claims. Among the parties filing claims were the United States and the States of New York and New Jersey. On February 19, 1993, with the permission of the court,[3] Montauk impleaded Steamship in the proceeding pursuant to Rule 14(c) of the Federal Rules of Civil Procedure. Steamship then filed the instant motion to dismiss or stay.

## Analysis

Federal Rule of Civil Procedure 14(c) provides:

> When a plaintiff asserts an admiralty or maritime claim within the meaning of Rule 9(h), the defendant or a claimant, as a third-party plaintiff, may bring in a third-party defendant who may be wholly or partly liable, *either to the plaintiff* or to the third-party plaintiff, by way of remedy over, contribution, or otherwise on account

of the same transaction, occurrence, or series of occurrences. In such a case the third-party plaintiff may also demand judgment against the third-party defendant in favor of the plaintiff ... *and the action shall proceed as if the plaintiff had commenced it against the third party defendant as well as the third-party plaintiff.* (Emphasis added).

Here Montauk, defendant and third-party plaintiff, argues that impleader is proper because Steamship may be wholly or partly liable to the United States and to the States of New York and New Jersey (the "government claimants"). Montauk's theory of liability rests on both subsection 311(p)(3) of the FWPCA, which authorizes a direct action against an insurer for liabilities incurred by the shipowner, and the Certificate provided by Steamship to the United States, which states that the insurer "consents to be sued directly in respect of any claim against any of the operators arising under subsections 311(f) and (g) of the Act." *Form CG–5358–9.* Steamship responds that the third-party complaint fails to state a claim on which relief may be granted. First, Steamship argues that neither the FWPCA nor the Certificate creates a cause of action against Steamship on behalf of the States of New York and New Jersey. Thus the existence of claims by these States cannot serve as a basis for a third-party complaint pursuant to Rule 14(c). Even if the FWPCA and the Certificate do give rise to a cause of action on behalf of the States, Steamship argues, both sources of law give Steamship the right to assert any defense against the government claimants that it could assert against Montauk. 33 U.S.C. § 1321(p)(3); *Form CG–5358–9.* Because the arbitration clause that formed the

**2.** Following Judge Keenan in an earlier case between the two parties presenting similar facts, *Montauk Oil Transportation Corp. v. Steamship Mutual Underwriting Association (Bermuda) Ltd.*, 1991 A.M.C. 1477, 1991 WL 18149 (S.D.N.Y.), Judge Edelstein held that a forum selection clause in Montauk's insurance policy did not eliminate the obligation to arbitrate disputes arising under the policy as provided by Club Rule 36.

**3.** Montauk requested permission to file its third-party complaint from Magistrate Judge Francis,

to whom I referred the case for general pretrial management. The court notes that 14(c) impleader is appropriate in limitation proceedings, *Petition of Klarman*, 270 F.Supp. 1001 (D.Conn. 1967), and that an action by the government claimants against Steamship is, if not itself an admiralty claim, within the supplemental jurisdiction of this court and thus a proper object of Rule 14(c) impleader. *See Shipping Corp. of India, Ltd. v. American Bureau of Shipping*, 1989 WL 97821 at *3 (S.D.N.Y.). Steamship does not argue otherwise.

basis for Judge Edelstein's Order is a "defense" Steamship may assert against the government claimants, Steamship reasons, the third-party complaint fails to state a claim on which relief may be granted. In the event that its motion to dismiss is denied, Steamship moves to stay the third-party proceedings pending the outcome of the arbitration between Montauk and Steamship pursuant to the Federal Arbitration Act, 9 U.S.C. § 3, and the Convention on the Recognition and Enforcement of Foreign Arbitral Awards, 9 U.S.C. § 201 *et seq.* Such a stay is necessary, Steamship argues, because it is entitled to assert against the government claimants in the third-party proceeding any defense that it could assert against Montauk—and whether such a defense is available will be determined by the arbitration.

A. *Whether section 311 of the FWPCA provides a cause of action against Steamship to the States*

■ Steamship's first argument for dismissal of the third-party complaint is that neither section 311 of the FWPCA nor the Certificate, on which the complaint is based, creates a cause of action against Steamship on behalf of the States of New York and New Jersey. Steamship asks the court to dismiss the third-party complaint with prejudice to the extent it demands judgment in favor of those States. The court agrees that, insofar as the third-party complaint relies on Steamship's liability to the States pursuant to section 311 and the Certificate, it fails to state a claim upon which relief may be granted. However, the court grants Steamship's motion to dismiss the complaint as to these claims without prejudice to Montauk's right to amend.

The ambiguous language of the FWPCA has led to confusion as to whether the statute creates a right of action on behalf of the States. *See In re Ballard Shipping Co.,* 772 F.Supp. 721, 722 (D.R.I.1991). Confronting this issue recently in *Ballard Shipping,* the

District Court for the District of Rhode Island conducted a careful analysis of the statute's text and legislative history. I adopt that court's reasoning here. In *Ballard,* the court turned first to subsection 311(f)(1) of the Act, which provides: [4]

> Except where an owner or operator can prove that a discharge was caused solely by (A) and act of God, (B) an act of war, (C) negligence on the part of the United States Government, or (D) an act or omission of a third party without regard to whether any such act or omission was or was not negligent, or any combination of the foregoing causes, such owner or operator of any vessel from which oil or a hazardous substance is discharged in violation of subsection (b)(3) of this section shall, notwithstanding any other provision of law, be liable *to the United States Government* for the actual costs incurred under subsection (c) of this section for the removal of such oil or substance by the United States Government.... ·

The court concluded that this subsection "plainly makes shipowners and operators liable only 'to the United States Government' for costs incurred during the removal of oil," and not to the States. 772 F.Supp. at 723. *See also In the Matter of Oswego Barge Corp.,* 673 F.2d 47, 48 (2d Cir.1982) (stating, in dictum, that section 311's "only purpose is to create a precise remedy solely for the United States to recover specified damages pursuant to a · carefully devised formula").

In response, Montauk points to subsections 311(f)(4) and (f)(5) of the Act, which it claims evince an intent to create a right to action on the part of the States.[5] These subsections provide:

> (4) The costs of removal of oil ... for which the owner or operator of a vessel ... is liable under subsection (f) of this section shall include any costs or expenses incurred by the Federal Government or any State government in the restoration or replacement of natural resources damaged

---

**4.** The 1990 amendments to the FWPCA, *see supra* note 1, do not affect the analysis here.

**5.** The court also noted that section 311 defines "United States" to include the several states, but not the federal government. It concluded that

this broad definition relates, "not to ... the sovereigns who have standing to sue, but to the geographical scope of potential liability under section 311 of the FWPCA." 772 F.Supp. at 723.

or destroyed as a result of a discharge of oil ... in violation of subsection (b) of this section.

(5) The President, or the authorized representative of any State, shall act on behalf of the public as trustee of the natural resources to recover for the costs of replacing such resources. Sums recovered shall be used to restore, rehabilitate, or acquire the equivalent of such natural resources by the appropriate agencies of the Federal Government, or the State government.

As the *Ballard* court noted however, these provisions are not inconsistent with the view that the Act creates no right of action on behalf of the States. Subsection (k)(1) of the Act provides for the creation of a revolving fund in which sums recovered by the United States are to be deposited. States may be reimbursed from this fund pursuant to subsection (c)(2)(H). Read in the context of this statutory scheme, the *Ballard* court reasoned, subsection (f)(4)

> merely defines the shipowner's measure of liability to include certain expenses incurred by state governments. It does not expressly or by implication grant a right of action to states. An aggrieved state must rely on the appropriate federal agency to bring suit against the shipowner and recover the state's damages under this statute.

772 F.Supp. at 724. Subsection (f)(5) also creates no right of action on the part of the States, the court concluded. Rather, its purpose is to "restrict[ ] the purposes to which the state may direct any awards it collects by way of reimbursements from the federal government." *Id.* I agree with the court in *Ballard* that the States have no right of action under the FWPCA.[6] Moreover, the Certificate affords the States no greater rights of action than they have under the provisions interpreted above.[7] I conclude that, to the extent that the third-party complaint relies on the FWPCA and the Certificate to create a right of action on behalf of the States of New York and New Jersey against Steamship, it fails to state a claim upon which relief may be granted.

▆▆ Montauk contends for the first time in its reply brief that impleader of Steamship as to the States of New York and New Jersey is proper because Steamship may be wholly or partly liable to the States under state law. Montauk's Opp.Mem. at 15–16. Steamship responds that this basis for impleader was not included in the third-party complaint, and that only the complaint is properly before the court. Steamship is correct. *Goldman v. Belden*, 754 F.2d 1059, 1065–66 (2d Cir.1985). However, a complaint should not be dismissed without leave to amend unless it is clear that there is no basis for relief. *See Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974). I therefore dismiss the third-party complaint, to the extent it demands judgment against Steamship on behalf of the United States and New York and New Jersey, without prejudice to Montauk's right to amend.

**B.** *Whether the third-party complaint is barred by the arbitration clause and Judge Edelstein's stay*

▆▆ In support of its argument that Montauk's third-party complaint is barred by the arbitration clause and by Judge Edelstein's stay, Steamship points to language in both the FWPCA and the Certificate that expressly entitles an insurer sued under the Act "to invoke all rights and defenses which would have been available to ... [the insurer] if an action had been brought against him by the

6. *Complaint of Allied Towing Corp.*, 478 F.Supp. 398 (E.D.Va.1979), cited by Montauk and the government, is not to the contrary. The question presented in that case was whether the remedy for oil spill cleanup costs granted to the State of Virginia under the FWPCA preempted a state law remedy. The court concluded that it did not. However, the court appeared to take for granted that Virginia's recovery under the FWPCA was to take place through the revolving fund created by

subsection (k)(1) of the Act. The question of whether states may bring a direct action against vessel owners and operators was never squarely addressed.

7. The Certificate provides: "The Insurer consents to be sued directly in respect of any claim against any of the operators arising under subsections 311(f) and (g) of the Act...."

owner or operator" of the insured vessel.[8] 33 U.S.C. § 1321(p)(3). Steamship argues that the arbitration clause is a "defense" it is entitled to invoke against the government claimants. Although its line of reasoning is somewhat unclear, Steamship appears to contend that if Steamship is not liable to Montauk, there is no basis on which Steamship could be liable to the government claimants. Steamship's Mem. at 4. Therefore, Steamship contends, the third-party complaint fails to state a claim on which relief may be granted.[9] The court disagrees.

■ Steamship's argument displays a misunderstanding of the procedural posture of a third-party action pursuant to Federal Rule of Civil Procedure 14(c), as well as of the FWPCA's statutory scheme.

> Rule 14 was modeled on Admiralty Rule 56. An important feature of Admiralty Rule 56 was that it allowed impleader not only of a person who might be liable to the defendant ... but also of any person who might be liable to the plaintiff.. The importance of this provision was that the defendant was entitled to insist that the plaintiff proceed to judgment against the third-party defendant.

Fed.R.Civ.P. 14 advisory committee's note (1966). The Rule provides that, after impleader, the action "shall proceed *as if the plaintiff had commenced it against the third-party defendant* as well as the third-party plaintiff." Fed.R.Civ.P. 14(c). A complaint such as Montauk's, then, which impleads a third-party defendant on the ground that it is liable to a plaintiff, fails to state a claim for which relief may be granted only if *the plaintiff* has no cause of action against the third-party defendant under the facts alleged in the complaint.

■ Here, Steamship would present a strong argument that the third-party complaint failed to state a claim if (1) the third-party complaint turned on the validity of Montauk's policy with Steamship at the time of the accident and (2) arbitration had determined that the policy was invalid.[10] However, neither proposition is true. First, the complaint filed on behalf of the government claimants is not based on the argument that Montauk's policy with Steamship was valid at the time of the accident. Rather, the third-party complaint states an action on behalf of the government claimants based on Steamship's provision of a certificate of financial responsibility to the United States, and on its consent to be sued directly pursuant to subsection 311(p)(3) of the FWPCA and the Certificate. This action depends at least in part on issues separate from the validity of the policy, such as the timing of Steamship's notice of termination to the United States.[11] Second, to the extent that the third-party claim does turn on the validity of the policy, arbitration has not yet decided the issue, and thus any "defense" it might supply is purely speculative. The function of a district court in considering a 12(b)(6) motion to dismiss is "not to weigh the evidence that might be presented at trial, but merely to determine whether the complaint itself is legally suffi-

---

8. Incorporating subsection 311(p)(3) by reference, the Certificate provides: "The Insurer shall be entitled to invoke only the rights and defenses permitted by section 311 of the Act to the vessel operator and the rights and defenses permitted by section 311 of the Act to the Insurer if an action were brought against the Insurer by the operator." *Form CG–5358–9.*

9. The court does not take Steamship to be arguing that the arbitration agreement entitles Steamship to force the government claimants, who are not parties to the agreement, to arbitrate their pollution claims. Steamship appears to concede as much in its brief. Steamship's Mem. at 5. Rather, the court understands Steamship's argument to be that the validity of Montauk's policy is arbitrable, and that the government claimants are bound by the outcome of the arbitration as to this issue. *Id.* at 4.

10. Although strong, this argument is not necessarily dispositive. Steamship would also have to show that the arbitration has a preclusive effect on the government claimants. See *infra* note 15.

11. In its memorandum of law in response to Steamship's motion to dismiss the third-party complaint, the United States contends that Steamship's liability to the government turns, not on the validity of the insurance policy, but on the effective date of termination of Steamship's undertaking to the government. U.S. Brief at 5–7. It is not necessary to resolve this issue in order to determine whether the third-party complaint states a cause of action upon which relief may be granted.

cient." *Goldman,* 754 F.2d at 1067, *citing Ryder Energy Distribution Corp. v. Merrill Lynch Commodities Inc.,* 748 F.2d 774 (2d Cir.1984). The mere fact that arbitration is pending is insufficient to show that the third-party complaint fails to state a claim. The court concludes that Montauk has stated a viable third-party claim against Steamship that is independent of arbitrable issues.[12]

### C. *Whether the third-party action should be stayed pending the outcome of the London arbitration*

■ Finally, Steamship argues that if its motion to dismiss the third-party complaint is not granted, the third-party proceeding must be stayed pending the outcome of arbitration pursuant to the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 *et seq.,* and the Convention on the Recognition and Enforcement of Foreign Arbitral Awards, 9 U.S.C. 201 *et seq.* In addressing Steamship's arguments, I consider only the portion of the third-party proceeding that has not been dismissed—that is, the demand for judgment against Steamship in favor of the United States.

The FAA provides, in pertinent part:

If any suit or proceeding be brought in any of the courts of the United States *upon any issue referable to arbitration* under an agreement in writing for such arbitration, the court in which such suit is pending, *upon being satisfied that the issue involved is referable to arbitration under such an agreement,* shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration.

9 U.S.C. § 3 (emphasis added). As I understand Steamship's argument, it runs as follows: (1) Steamship's defense against Mon-

tauk—its claim that Montauk's policy is void *ab initio* because of a material misrepresentation—is an arbitrable issue; (2) because Steamship is entitled to invoke this defense against the United States pursuant to the FWPCA and the Certificate, any claim seeking judgment in favor of the United States on the basis of the FWPCA or the Certificate must be one that is "brought upon an issue referable to arbitration" under a written arbitration agreement; (3) therefore, a stay of the third-party action must be granted. I disagree.

Once again, Steamship's argument is grounded in confusion as to the posture of a third-party claim pursuant to Federal Rule of Civil Procedure 14(c). As noted *supra,* the third-party complaint is based, not on the claim that Montauk's policy with Steamship was valid at the time of the March oil spill, but on Steamship's provision of a certificate of financial responsibility to the United States pursuant to the FWPCA. Whether Steamship in fact provided such a certificate, the validity of the certificate in light of Montauk's alleged misrepresentation, and when the termination of the undertaking represented by the certificate became effective, are not arbitrable issues under either the Certificate or the FWPCA. Therefore the third-party complaint is not an action "brought ... upon any issue referable to arbitration under an agreement in writing for such arbitration." 9 U.S.C. § 3.

To be sure, both the FWPCA and the Certificate allow Steamship to assert the claim that the policy was void *ab initio* as a defense against the United States. And Steamship's agreement with Montauk provides that, as between those two parties, this question must be settled in arbitration. But the United States is not a party to the arbitration agreement. In *Nederlandse Erts-Tankersmaatschappij, N.V. v. Isbrandtsen Co., Inc.,* 339 F.2d 440 (2d Cir.1964), the

12. The court rejects Steamship's argument that to permit the third-party complaint violates the spirit of Judge Edelstein's order, because it allows Montauk to do indirectly what the order prohibited it from doing directly: bypass arbitration and resolve its dispute with Steamship in federal court. This argument mischaracterizes Montauk's third-party complaint. The purpose

of the third-party complaint is to litigate, not *Montauk's* claims against Steamship, but *those of the government claimants.* Although this litigation may require litigation of some of the same issues that are the subject of the London arbitration, *see infra,* this result is no different than if the government claimants had sued Steamship directly.

Second Circuit Court of Appeals held that the FAA does not entitle a defendant who is not a party to written arbitration agreement to stay proceedings in federal court pending arbitration under an agreement between plaintiff and a third party. The court held that "[g]ranting the stay cannot be justified under the terms of the Arbitration Act. Defendants are not parties to the arbitration agreement. The issues of the present action are not referable to arbitration between the parties." 339 F.2d at 440. *See also Sierra Rutile, Ltd. v. Katz,* 937 F.2d 743, 750 (2d Cir.1991) (reaffirming *Nederlandse* ); *Citrus Marketing Board v. J. Lauritzen A/S, et al.,* 943 F.2d 220, 224–25 (2d Cir.1991) (same). Here, unlike in *Nederlandse,* the party seeking a stay is a signatory to an arbitration agreement. The logic of *Nederlandse* still applies, however, because the party against whom the stay is sought has not agreed to arbitrate or to defer its action while arbitration takes place between other parties. *Sierra Rutile,* 937 F.2d at 748, 750 (FAA inapplicable where parties involved in action are not parties to an arbitration agreement under which issues are referable to arbitration); *In re Talbott Big Foot, Inc.,* 887 F.2d 611, 614 (5th Cir.1989) (mandatory stay provision of FAA does not apply to those not contractually bound by arbitration agreement); *cf. Coastal (Bermuda) Ltd. v. E.W. Saybolt & Co.,* 761 F.2d 198, 203 n. 6 (5th Cir.1985). The purpose of the FAA is "to ensure judicial enforcement of privately made agreements to arbitrate." *Dean Witter Reynolds, Inc., v. Byrd,* 470 U.S. 213, 219, 105 S.Ct. 1238, 1242, 84 L.Ed.2d 158 (1985). This goal is not advanced by forcing a litigant that has not

agreed to arbitrate to delay the prosecution of its claims.[13] I conclude that the FAA does not mandate a stay of the third-party proceeding in this case.[14]

As the *Nederlandse* court noted, even if the FAA does not entitle a party to a stay as a matter of law, this court has discretion to grant a stay pursuant to "the power inherent in every court to control the disposition of the cases on its docket with economy of time and effort for itself, for counsel, and for litigants." *Nederlandse,* 339 F.2d at 441 (quoting *Landis v. North America Co.,* 299 U.S. 248, 57 S.Ct. 163, 81 L.Ed. 153 (1936) (Cardozo, J.)). Such a discretionary stay "may ... be appropriate where the pending proceeding is an arbitration in which issues involved in the case may be determined." 339 F.2d at 441. Steamship appears to urge a discretionary stay on page six of its brief, in the interest of "judicial and administrative economy."

In *Chang v. Lin,* 824 F.2d 219 (2d Cir.1987), the Court of Appeals for the Second Circuit considered whether a district court erred in granting a discretionary stay of claims under the Securities Act of 1933 pending the arbitration of state law claims. The court of appeals reversed the district court, holding that, at least where claims under the Securities Act of 1933 are concerned, "arbitration and federal litigation should proceed simultaneously absent compelling reasons to stay the litigation." 824 F.2d at 223. The court emphasized that "[a] plaintiff has the right to litigate a '33 Act claim in a federal court notwithstanding any arbitration agreement with the defendant. This right is substantially diminished if such

---

**13.** It is possible to read Steamship's motion papers as arguing that the United States *is* made a party to the arbitration agreement through section 311(p)(3) of the FWPCA. However, this argument finds no support in the language of the statute. Although the FWPCA does permit Steamship to raise the validity of Montauk's insurance policy as a defense in an action by the United States, I see nothing in the statute that precludes the United States, once the defense is raised, from litigating the issue in federal court. On the contrary, subsection 311(n) of the Act provides, in pertinent part, that "[t]he several district courts of the United States are invested with jurisdiction for any actions ... arising under this section." 33 U.S.C. § 1321(n). To hold that private parties can agree on terms that de-

prive the United States of the right to litigate its FWPCA claim fully in federal court would contravene the express policy of the Act.

**14.** A similar analysis applies to the Convention on the Recognition and Enforcement of Foreign Arbitral Awards, 9 U.S.C. § 201 *et seq.,* which presupposes an "agreement in writing to arbitrate" as the basis for the recognition and enforcement of arbitration proceedings involving foreign and domestic parties. *See* Article II. *See also Sedco v. Petroleos Mexicanos Mexican National Oil Co.,* 767 F.2d 1140, 1145–46 (5th Cir. 1985); *In re Talbott Big Foot,* 887 F.2d at 614 n. 4.

claims must lay [sic] dormant until other claims arising out of the same series of events have been arbitrated." *Id.* at 222. *See also Dean Witter Reynolds, Inc. v. Byrd,* 470 U.S. 213, 225, 105 S.Ct. 1238, 1245, 84 L.Ed.2d 158 (1985) ("[O]nce it is decided that the two proceedings are to go forward independently, the concern for speedy resolution suggests that neither should be delayed. While the impossibility of the lawyers being in two places at once may require some accommodation in scheduling, it seems to me that the heavy presumption should be that the arbitration and the lawsuit will each proceed in its normal course.") (White, J., concurring); *Creative Securities Corp. v. Bear Stearns & Co.,* 671 F.Supp. 961 (S.D.N.Y. 1987); *Castro v. Marine Midland Bank, N.A.,* 695 F.Supp. 1548 (S.D.N.Y.1988). This reasoning is all the more compelling where, as here, the independent federal claim is brought on behalf of the United States, the United States is not a party to the arbitration agreement, and the claim involves the vindication of an public right of broad social importance: pollution-free waterways. *See, e.g., Sam Reisfeld & Son Import Co. v. S.A. Eteco,* 530 F.2d 679, 681 (5th Cir.1976) (district court properly ordered that antitrust claims proceed to trial and that remaining claims be submitted to arbitration); *Horne v. New England Patriots Football Club, Inc.,* 489 F.Supp. 465, 470 (D.Mass.1980) ("Where the arbitration proceeding cannot dispose of or even deal with the [federal age] discrimination claims, and where the policy of vindicating an individual's independent statutory right of protection against age discrimination is implicated, ... a stay of judicial proceedings is improper.") (footnote omitted). Because I find Steamship has offered no "compelling reason" that outweighs the "heavy presumption" against a stay, *Chang,* 824 F.2d at 223, its request for a stay is denied.[15]

## Conclusion

For the reasons stated above, Steamship's motion to dismiss the third-party complaint is hereby granted, to the extent that the complaint demands judgment in favor of the States of New York and New Jersey. The Clerk of the Court is hereby ordered to dismiss this portion of the third-party complaint without prejudice to Montauk's right to amend.[16] Steamship's motion to dismiss the third-party complaint is hereby denied, to the extent that the complaint demands judgment in favor of the United States. Steamship's motion to stay the third-party proceeding pending arbitration is hereby denied. All remaining discovery is to be completed by May 1, 1994. A motion to amend the pleadings must be filed on or before April 15, 1994. Any other motions must be filed on or before May 16, 1994. A joint pretrial order is due by June 1, 1994, and the case shall be ready for trial on June 2, 1994. Counsel are directed to review the court's Individual Rules regarding trial readiness.

SO ORDERED.

## MEMORANDUM OPINION AND ORDER ON RECONSIDERATION

On April 19, 1994, I granted requests by the parties to reconsider the court's opinion of April 4, 1994, which (1) denied a motion by third-party defendant Steamship Mutual Underwriting Association (Bermuda) Limited ("Steamship") to dismiss or stay the third-party action on behalf of the United States

---

**15.** Steamship suggests that a stay should be granted because, if the arbitrators conclude that Montauk's policy was void at the time of the oil spill, this outcome would be binding on the United States in the third-party proceeding. I note that the United States Supreme Court cast doubt on this claim in *Dean Witter,* 470 U.S. at 222, 105 S.Ct. at 1243 ("it is far from certain that arbitration proceedings will have any preclusive effect on the litigation of nonarbitrable federal claims"). I do not reach the issue, however, because the Supreme Court made clear that the collateral estoppel effect of an arbitration proceeding on litigation in federal court can be determined only after arbitration is completed.

*Id.* at 223, 105 S.Ct. at 1243. Therefore the question of the preclusive effect of the arbitrators' decision on the United States' pollution claim against Steamship is not properly before the court.

**16.** Because the third-party complaint does not set out separate causes of action in favor of the different government claimants, there is no particular cause of action that I can direct the Clerk of the Court to dismiss. I can direct the Clerk of the Court only to dismiss each cause of action, insofar as it asserts a claim in favor of New York and New Jersey.

against Steamship; and (2) held that section 311 of the Federal Water Pollution Control Act ("FWPCA"), 33 U.S.C. § 1321, does not create a cause of action against third-party plaintiff Montauk Oil Corporation ("Montauk") on behalf of the States of New York and New Jersey. Having read the parties' briefs and carefully reconsidered the issues addressed in the April 4 opinion, I conclude that the holdings of that opinion are correct, and decline to modify those holdings.

## I. The Motions for Reconsideration

I conclude that, contrary to Steamship's argument, the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 *et seq.*, and the Convention on the Recognition and Enforcement of Arbitral Awards ("the Convention"), 9 U.S.C. § 201 *et seq.*, do not mandate a stay of the third-party action pending arbitration between Montauk and Steamship in London, for substantially the reasons stated in the April 4 opinion. Among the facts central to that conclusion are (1) that the third-party action is based, not on the validity of Montauk's policy with Steamship, but on Steamship's provision of a Certificate of Financial Responsibility ("the Certificate") to the United States, pursuant to section 311 of the FWPCA, 33 U.S.C. § 1321(p)(1) (now repealed); (2) that, under the Certificate, Steamship "consents to be sued directly" by the United States for claims arising under the FWPCA; (3) that section 311 of the FWPCA provides that "the several district courts of the United States are invested with jurisdiction" for any actions arising under the section, 33 U.S.C. § 1321(n); and (4) that the United States is not a party to the arbitration agreement that exists between Montauk and Steamship. These facts are discussed more fully in the April 4 opinion. They lead me to conclude that the right to arbitrate the validity of Steamship's policy in London is not a "right or defense" that may be invoked against the United States within the meaning of § 311 of the FWPCA, and that the FAA and the Convention do not mandate a stay of the third-party action.

Although the FAA and the Convention do not require a stay, Steamship correctly notes that the court has discretion to order a stay of the third-party action. I decline to exercise discretion to stay the third-party action for substantially the reasons stated in the April 4 opinion. I am not persuaded that the outcome of arbitration between Montauk and Steamship would be binding on this court in the resolution of the action on behalf of the United States against Steamship. In addition, although it appears that some progress is being made toward setting a date for the arbitration between Montauk and Steamship, a date has not been set. It is not clear how soon an award can be expected, and it is possible that, when an award is made, it will be appealed. Steward Aff. at ¶¶ 4–5, and Ex. DWS 1 at 3. This action is over four years old, and I decline to further postpone the litigation of important federal rights, where it is unclear how long it will take for the outcome of the arbitration to become final.

I also reaffirm the court's holding that section 311 of the FWPCA does not create a cause of action for the States of New York and New Jersey, for the reasons set forth in the April 4 opinion and in *In re Ballard Shipping Co.*, 772 F.Supp. 721, 722 (D.R.I. 1991). Subsection 311(f)(1) of the FWPCA creates a cause of action for cleanup costs against owners and operators of vessels only on the part of "the United States Government." 33 U.S.C. § 1321(f)(1). Although subsections 311(f)(4) and (f)(5) make vessel owners and operators liable for oil spill cleanup costs incurred by states, 33 U.S.C. § 1321(f)(4) and (f)(5), the statutory scheme does not authorize states to sue directly for such costs, but merely permits them to recover their damages from a revolving fund. 33 U.S.C. § 1321(c)(2)(H). The fund, created by subsection 311(k)(1) of the FWPCA, is supplied by sums recovered by the United States in its direct actions against vessel owners and operators. 33 U.S.C. § 1321(k)(1).

In their briefs in support of their motion for reconsideration, the States of New York and New Jersey raise the new argument that section 301(c) of the Comprehensive Environmental Response, Compensation and Liability Act ("CERCLA"), 42 U.S.C. § 9651(c), creates a cause of action on behalf of state trustees of natural resources under the FWPCA. New York's Reply Br. at 5–6. I

disagree. Section 301(c) of CERCLA mandates the promulgation of regulations establishing a methodology for the assessment of natural resource damages for purposes of lawsuits under both CERCLA and the FWPCA. If a trustee of natural resources uses the methodology set forth in the regulations promulgated under section 301(c) of CERCLA, the assessment is entitled to a rebuttable presumption of validity in any proceeding under CERCLA or the FWPCA. 42 U.S.C. § 9607(f)(2)(C). However, the states cite no language in either section 301(c) of CERCLA or in the regulations promulgated thereunder that creates a new cause of action for a state trustee of natural resources under the FWPCA. These provisions appear to do no more than set forth a method by which a state's damages may be ascertained. Those damages must still be collected pursuant to section 311 of the FWPCA, i.e. by an action by the United States Government and a subsequent recovery from the revolving fund.

## II. The Parties' Remaining Motions

At a conference before the court on August 2, 1994, several parties requested amendments in the briefing schedule set by the court for the remaining motions in this action, and raised questions about the timing and the propriety of motions filed by the City of New York and the State of New Jersey.

### A. *The City of New York's Motion for Partial Summary Judgment*

A motion for partial summary judgment was filed by the City of New York ("the City") on June 22, 1994. In its motion, the City seeks a ruling that Montauk is strictly liable for cleanup and removal costs incurred by the City under New York State Navigation Law § 181 and New York City Hazardous Substance Emergency Response Law, New York City Admin.Code § 24–601 *et seq.* The City also seeks a specific quantum of damages, $82,754.01, which it claims represents the cost of its cleanup and removal efforts. In a letter to the court dated July 12, 1994, and at the August 2 conference, counsel for Montauk disputed the amount of damages·asserted by the City, and argued that the portion of the City's motion that

seeks a specific sum of damages is inappropriate for resolution on summary judgment. Montauk's counsel also stated that insufficient discovery has been conducted to enable Montauk to respond to the damages portion of the City's motion. Montauk's counsel requested that Montauk be permitted to respond only to those portions of the City's motion interpreting state and city law, and reserve the issue of the amount of damages suffered by the City for trial. The court agrees that the amount of damages suffered by a plaintiff is usually a highly fact-dependent issue that is difficult to resolve on summary judgment. In addition, turning first to the issue of liability, while reserving the question of damages for a later date, may streamline the resolution of this action: if Montauk is not liable to the City, the court need not reach the damages issue at all. Accordingly, Montauk is directed to serve and file a response to that portion of the City's motion requesting summary judgment on liability by August 30, 1994. The City is directed to serve and file its reply by September 15, 1994. Upon resolution of the liability portion of the City's motion, the court will hold a conference to discuss the advisability of, and if necessary to set up a briefing schedule for, the remainder of the motion.

### B. *The State of New Jersey's Motion for Partial Summary Judgment*

A motion for partial summary judgment was filed by the State of New Jersey on June 22, 1994. That motion seeks summary judgment against four different parties to this action—Montauk, Northeast Petroleum ("Northeast"), Citgo Petroleum Corp. ("Citgo"), and Bouchard Transportation Co., Inc. ("Bouchard"), on several different grounds. At the August 2 conference, counsel for Montauk, Northeast, Citgo and Bouchard argued that certain portions of the State of New Jersey's motion requested the court to resolve issues of negligence, causation, and knowledge, questions that are usually highly fact-bound and inappropriate for resolution on summary judgment. Counsel for Montauk requested that New Jersey's motion be bifurcated and that the parties be permitted

to respond only to those portions of the motion raising what are agreed to be purely legal issues, deferring their responses to the remainder of the motion. In addition, counsel for Montauk, Northeast, Citgo and Bouchard objected to the form of New Jersey's Local Rule 3(g) statement, and requested that New Jersey be required to submit a separate 3(g) statement setting forth undisputed facts relevant to its requests for relief against each of the four parties. The court agrees that issues of negligence, causation, and knowledge frequently involve disputes of fact and are rarely appropriate for resolution on summary judgment. Even when summary judgment is appropriate on such issues, it may require a significant expenditure of resources, both by the parties and by the court. Thus, consideration of summary judgment on those issues should be deferred until resolution of the purely legal issues. Accordingly, all responses to the State of New Jersey's motion for partial summary judgment may be directed solely to that portion of the motion seeking a ruling that Montauk, Northeast, Citgo and/or Bouchard are strictly liable to the State of New Jersey under the FWPCA, the Spill Act, *N.J.S.A.* 58:10–23.11, the Water Act, *N.J.S.A.* 58:10A *et seq.*, or Title 23 of the Fish and Game Code, *N.J.S.A.* 23:5–28(a). Such responses must be served and filed no later than September 30, 1994. The State of New Jersey's reply must be served and filed by October 28. Upon resolution of this portion of the State of New Jersey's motion, the court will hold a conference to discuss the advisability of, and if necessary to set up a briefing schedule for, the remainder of the motion. In the meantime, the State of New Jersey is directed to submit four separate 3(g) statements setting forth undisputed facts relevant to its request for relief against each of the four opposing parties named in its motion. The revised 3(g) statements shall set forth undisputed facts only as to that portion of the State of New Jersey's motion directed to purely legal issues, for which a briefing schedule is set in this order. Montauk, Northeast, Citgo and Bouchard are directed to file 3(g) statements in response. If, after a decision is rendered on the first portion of the State of New Jersey's motion, the court determines that a summary judgment motion as to issues of negligence, causation and knowledge would advance the resolution of this action, the State of New Jersey may file four separate 3(g) statements setting forth undisputed facts relevant to those issues as to each of the four parties named in the motion.

At the August 2 conference, several counsel raised the possibility of filing cross-motions for summary judgment against the State of New Jersey. It was agreed that any such cross-motions would be made at the time the parties responded to New Jersey's partial summary judgment motion, *i.e.,* September 30, 1994. Opposing papers are to be served and filed by the State of New Jersey by October 28, 1994. Any replies shall be served and filed by November 15, 1994. Such cross-motions shall remain within the limits set forth in this order for the State of New Jersey's motion, *i.e.,* they shall not address issues of negligence, causation, or knowledge.

C. *The State of New York's Motion for Partial Summary Judgment*

A motion for partial summary judgment filed by the State of New York on June 22, 1994 was also discussed at the August 2 conference. That motion requested the court to find Montauk strictly liable to the State of New York under the New York State Navigation Law and the New York Environment and Conservation Law. At the August 2 conference, counsel for Montauk and counsel for the State of New York stated that they intended to resolve this issue by stipulation, mooting the motion and leaving the question of the quantity of damages to be resolved at trial. Counsel are hereby directed to submit the proposed stipulation by September 15, 1994.

D. *The United States' Motion for Partial Summary Judgment*

A motion for partial summary judgment by the United States was filed on June 22, 1994. Opposing papers have been filed by both Montauk and Steamship. By letter of August 11, 1994, the United States, with the consent of Montauk and Steamship, requested an extension of time in which to file its

reply. An extension of time until September 9, 1994 was granted by order of the court dated August 19, 1994.

SO ORDERED.